# STATE OF WISCONSIN *v.* PELICAN INSURANCE COMPANY.

### ORIGINAL.

Argued April 25, 1887. — Decided May 14, 1888.

This court has not original jurisdiction of an action by a State upon a judgment recovered by it in one of its own courts against a citizen or a corporation of another State for a pecuniary penalty for a violation of its municipal law.

This was an action of debt, commenced in this court by the State of Wisconsin against a corporation of Louisiana. The declaration was as follows :

" The plaintiff, The State of Wisconsin, and one of the States of the United States, now comes and complains of the defendant, The Pelican Insurance Company of New Orleans, a corporation duly organized and existing under the laws of the State of Louisiana, in a plea of debt —

" For that, whereas the plaintiff, the said State of Wisconsin, on the 16th day of September in the year 1886, at the county of Dane in the said State of Wisconsin, and in and before the Dane County Circuit Court, in said State — such court being then and there a court of general jurisdiction under the laws of said State — and by the consideration and judgment of the said court, recovered against the said defend-

ant, the said Pelican Insurance Company, a judgment in favor of the said plaintiff for the sum of eight thousand five hundred dollars damages, together with the further sum of forty-five dollars and thirty-nine cents for costs and disbursements, amounting in all to the sum of eight thousand five hundred and forty-five dollars and thirty-nine cents; which said judgment still remains in that court in full force and effect, and not in anywise modified, reversed, set aside, appealed from, or otherwise vacated; and the said plaintiff, the said State of Wisconsin, hath not obtained any satisfaction upon the said judgment, but, on the contrary, the whole thereof, together with interest thereon from said date of such judgment, remains wholly unpaid and owing; whereby an action hath accrued unto the said plaintiff, the said State of Wisconsin, to demand and have from and of the said defendant the said sum of eight thousand five hundred and forty-five dollars and thirty-nine cents, with interest.

"Wherefore the said plaintiff, the said State of Wisconsin, saith that the plaintiff is injured and hath sustained damage to the said amount of eight thousand five hundred and forty-five dollars and thirty-nine cents, with interest, and therefore it brings this suit."

Annexed to the declaration was a copy of the record of the judgment therein described, which showed that it was rendered on default of the defendant, after service of summons on three persons, each of whom was stated in the officer's return to be a resident and citizen of Wisconsin and an agent of the defendant, upon a complaint alleging that the defendant had done business in the State for thirty months, without having itself, or by any officer, agent or other person in its behalf, prepared or deposited in the office of the commissioner of insurance of the State annual statements of its business, as required by the provision of § 1920 of the Revised Statutes of Wisconsin, and that the defendant had thereby become indebted to the plaintiff in the sum of $15,000, according to that provision.

By that section of the Revised Statutes of Wisconsin, it is enacted that the president or vice-president and secretary of

each fire insurance corporation doing business in the State shall annually within the month of January prepare and deposit in the office of the commissioner of insurance a statement, verified by their oaths, of the business of the corporation during the year, and of the condition thereof on the 31st day of December then next preceding; exhibiting various items, enumerated in the statute, as to its capital stock, property or assets, liabilities, income and expenditures, and any other items or facts which the commissioner of insurance may require, and that " for any failure to make and deposit such annual statement, or to promptly reply in writing to any inquiry addressed by the commissioner of insurance in relation to the business of any such corporation, or for wilfully making any false statement therein, every such corporation or officer so failing or making such false statement shall forfeit five hundred dollars, and for neglecting to file such annual statement an additional five-hundred dollars for every month that such corporation shall continue thereafter to transact any insurance business in this state until such statement be filed."

By the statute of Wisconsin of 1885, c. 395, (which took effect April 12, 1885,) § 1, it is "made the duty of the commissioner of insurance to prosecute to final judgment, in the name of the State, or to compromise, settle or compound, every forfeiture incurred by an insurance corporation, by its failure to comply with, or for its violation of, any law of the State, of which he may be credibly informed;" and by § 2, "one half of every sum collected, paid or received by virtue of section 1 of this act shall be paid into the state treasury, and the remainder shall belong to the commissioner of insurance, who shall pay all expenses incurred in prosecuting all actions brought to enforce the payment of such forfeitures, both in and out of the State, and shall pay all expenses incident to the collection of such forfeitures."

In the present action in this court, the defendant filed several pleas, the first of which was as follows:

"The defendant is a civil corporation organized under the terms of the Revised Statutes of the State of Louisiana, sections 638 to 688, both inclusive, and is authorized to effect fire

insurances, and is subject to suit and required to determine its domicil in the city aforesaid, and to maintain and designate an officer of that company to receive there citations and other judicial writs and notices. This duty has been fulfilled from the date of the organization, and the charter of the company has been recorded and published, as those statutes require, in the office of the recorder of mortgages and a city paper, for the time defined in the statute. No other designation has been made or required of the defendant. The section 687 of the Revised Statutes of the United States defines the original jurisdiction of this court, and designates as subjects for the exercise of that jurisdiction, where a State is the complainant, citizens of States other than· of the plaintiff or complainant; and, that there should be no error on the subject, the first section of the Fourteenth Amendment to the Constitution of the United States exactly describes all of those who are citizens. They are natural persons born or naturalized within the limits of the United States, and having a residence in any State determines the State in which he may have privilege or immunity as a citizen. Moreover, the complaint of the plaintiff discloses that this defendant is a fire insurance company, without political character or interstate relations, and had its origin and domicil in New Orleans, and that the said corporation had offended the State of Wisconsin by imputed and alleged disobedience or inattention to her statute laws, and had incurred heavy forfeitures and penalties by such offences to the sum stated in the demand, and for the collection of which fines and forfeitures this suit has been commenced in this court. But the defendant says that the statute of the United States, above cited, further defines the cause for the exercise of original jurisdiction that the controversy should be of a civil nature. It excludes from cognizance of this court the punitive statutes and divers litigations arising out of the internal and peculiar or peevish regulations, accompanied with fines, forfeitures, and arbitrary exactions, which a State may impose upon citizens or corporations of other States from a just cause, or from caprice or captiousness. The controversy must be of a civil nature, and not of

the punitive nature, as shown by this record.    Wherefore, this defendant submits to this court that the complaint of this plaintiff does not show a cause within the original jurisdiction of the court, nor within the terms of the statutes of the United States."

To this plea the plaintiff filed a general demurrer, upon which the case was set down for argument.

*Mr. Samuel Shellabarger* for plaintiff.    *Mr. J. M. Wilson* and *Mr. H. W. Chynoweth* were with him on the brief.

The demurrer presents two distinct grounds for the defeat of the original jurisdiction of the court.

1st. That because the defendant is a local fire insurance company, deriving its existence, location, and non-political and non-interstate franchise from the local or state laws, it is therefore not a "citizen of another State," within the sense of these words, either as found in § 687 of the Revised Statutes of the United States, or as found in § 2, article 3, of the Constitution of the United States, or within the meaning of the words, "citizens of the United States and of the State wherein they reside," as found in the Fourteenth Amendment; and

2d. That the present suit is one for the enforcement of a penalty or forfeiture, and is a suit penal in its character, and is not "a controversy of a civil nature," within the meaning of these words in § 687, Rev. Stat.

I. 1st. Each of these alleged defences is, we submit, plainly bad.    The first, to wit, that this action of debt upon a judgment is not an action of a civil nature, is obviously untenable, because the use of the words "controversies of a civil nature," as found in § 687, has sole regard to that primary division of actions into two classes — civil and criminal.

The classification pointed to by the words "controversies of a civil nature" is that, and only that, pointed out in 4 Blackstone's Commentaries, p. 5, in these words: "The distinction of public wrongs from private, of crimes and misdemeanors from civil injuries, seems principally to consist in this: That private wrongs, or civil injuries, are an infringement or priva-

tion of civil rights which belong to individuals, considered merely as individuals; public wrongs, or crimes and misdemeanors, are a breach or violation of public rights and duties due to the whole community, considered as a community, in its social aggregate capacity."

Had § 687 attempted to exclude, from the original jurisdiction of this court, jurisdiction of the pecuniary or civil rights due to a State in its corporate capacity (and a State is a *private individual* when suing under the original jurisdiction of this court) merely because the debt owing to the State arose out of a tort instead of a contract, then the section would have been palpably in violation of § 2, article 3, of the Constitution, which does not so limit the original jurisdiction of this court, but, on the contrary, expressly extends its original jurisdiction to "all cases . . . in which a State shall be a party," and which comes within the judicial power of the United States, and which judicial power the same section extends to "all cases in law and equity," including "controversies between a State and the citizens of another State."

This, therefore, takes in every case, in law and equity, between a State and citizens of another State where the liability is of a civil nature, within the definition of these words as above given from Blackstone, whether sounding in contract or in tort. The Eleventh Amendment to the Constitution enforces this interpretation of the words "cases" and "controversies," as found in § 2, article 3, did these words admit of any doubt as applied to controversies between a State and citizens of another State. This is so because, in this Eleventh Amendment the words "cases in law and equity," as applied to States and citizens of other States, are supplied by the words "any suit in law or equity." The words "cases in law and equity" in § 2, article 3, are the equivalent of "any suit in law or equity" as found in Eleventh Amendment.

And it is thoroughly settled by this court that the word "suit," as applied to a controversy between a State and citizens of another State, means any civil demand or claim for money or private right, as distinguished from a criminal prosecution.

All criminal prosecutions, as to their method of institution and prosecution, are thoroughly distinguished from these "controversies at law or in equity," by article VI of the Amendments; and, amongst other things, it compels every criminal prosecution to be in the district, previously ascertained by law, wherein the crime shall have been committed.

It is thus that, from the beginning, the Constitution has been held to divide actions into two classes as applied to the original jurisdiction of this court where States are parties, to wit, into civil and criminal, and to make the original jurisdiction of this court apply to every "case" or "suit" or "controversy" where a State is plaintiff and a citizen of another State defendant, and which is not within the words "criminal prosecutions," as found in the Sixth Amendment. And these express provisions of the Constitution were the authority upon which Congress was entitled to introduce, and did introduce, the words "civil nature" after the word "controversies" in § 687 of the Revised Statutes of the United States.

2d. Another conclusive reason why the present action is of a civil nature is that it is an action *ex contractu*, founded upon a contract of record, to wit, judgment; and is in no sense penal. In the court below every penal element, entering into the original cause of action, was conclusively tried, adjudicated, and settled beyond review by this court, if jurisdiction existed in the court below. This court sits upon and tries (outside of said question of jurisdiction) the question of pecuniary indebtedness, and can neither inquire into nor know what was the cause of action in the original suit. That question is absolutely excluded from the investigation of this court. See *Biddle* v. *Wilkins*, 1 Pet. 686, 692; *Pennington* v. *Gibson*, 16 How. 65.

These cases might be indefinitely multiplied, but need not be; and the apology for citing any upon a proposition so familiar and settled as the one we now enforce, namely, that the rendition of a judgment by a competent jurisdiction merges and extinguishes the original cause of action, and makes the judgment to be a new debt, with the new characteristics of contract obligation, against which no defence is al-

lowed that did not arise subsequently to the judgment, is to be found only in the fact that the plea demurred to is one that ignores this fundamental and settled rule of the law, recognized, as remarked by this court, in every system of jurisprudence known to civilized States. See *Taylor* v. *Root*, 4 Keyes (N. Y.), 235; *Thatcher* v. *Gammon*, 12 Mass. 268; *Spencer* v. *Brockway*, 1 Ohio, 259, 1st ed., 122, 2d ed.; *S. C.* 13 Am. Dec. 615; *Indiana* v. *Helmer*, 21 Iowa, 370; *Healy* v. *Root*, 11 Rich. 390.

II. We now turn to the other defence relied on in the plea demurred to, to wit, that the defendant corporation is an artificial person, so local in its nature and so destitute of interstate functions, purposes, and franchises, and so fettered and shielded by the statutes giving it existence, as that it is inaccessible, as a defendant, by the processes of the courts of other States, under the statutes of such other States providing for services of process upon foreign corporations doing business in the State where the suit is brought.

We proceed to state, first of all, what is held by the courts of Wisconsin regarding the liability to be sued in Wisconsin, which is created by her laws, as against foreign corporations doing business in Wisconsin. After doing this we shall give a reference to the rulings of this court upon the same general subject.

In introducing these two classes of authorities, to wit, the interpretation, by the Supreme Court of Wisconsin, of her own statutes, and the interpretation put by this court upon the constitutional provision regarding commerce between the States and other like principles of interstate law, two things must be carefully premised touching the bearing of these authorities upon the issue raised by the demurrer. One is that the plea demurred to bases itself upon the legal idea that this particular corporation is not a "citizen of another State" within the sense of these words as found in § 2, article 3, and in articles XI and XIV of the Amendments, and in § 687 of the Revised Statutes of the United States; and hence that no *possible* state of legislation, in Wisconsin, touching suits against foreign insurance companies, and touching the state of their business and agency, can make a suit in Wisconsin against

such foreign corporation possible; and that hence, also, no averment was needed in this first plea regarding the State of Wisconsin's statute, or the state of defendant's business in that State, to make its plea of non-citizenship of another State a good plea.

The other thing that must be premised is that the other and independent defence set up in this first plea must proceed upon the idea that, if defendant might, under possible conditions of legislation, agency, and business in Wisconsin, be suable there, yet since this court judicially knows the condition of Wisconsin's public statutes (1 Greenl. Ev., sec. 6, p. 10, 13th ed., and cases in note 3), and since the plea avers defendant to be a corporation having its habitat in Louisiana alone, and one without interstate franchises and objects, therefore the non-suability of defendant in Wisconsin is made out by simply averring what kind of a charter defendant has, and without any averment as to its business and agency in Wisconsin.

We now present to the court the decision of the Supreme Court of Wisconsin in the case of *State of Wisconsin* v. *United States Mutual Accident Association,* 67 Wisconsin, 624, recently decided.

The case was stated as follows: This is an appeal from an order refusing to set aside the service of summons in this action, the defendant having appeared specially and for that purpose only. The sheriff's return indorsed upon the summons was to the effect that on April 10th, 1886, at Fort Howard, Brown County, Wisconsin, he served the within summons upon the within-named defendant, personally, by then and there delivering to and leaving with C. Bombach, a resident and citizen of this State, personally, he, the said Bombach, being then and there an agent of the said defendant, a true copy thereof. From the affidavit upon which the motion was based, and the affidavits and proofs used in opposition to the same, it appears, in effect, that the defendant was, at the several dates herein mentioned, a foreign insurance corporation, previously organized under the laws of the State of New York, and having its home office at No. 320 Broadway, in the city of New York; that its business was that of receiving applications for and

issuing accident insurance policies upon the principles of mutual insurance; that it had never been admitted or licensed to transact business of accident insurance in this State, or had never designated or appointed any attorney or agent in this State, for the service of process in actions in this State against the defendant; that said C. Bombach has been a resident of Fort Howard, in this State, since September 10, 1883; that he commenced soliciting insurance for the defendant in February, 1885, and continued to advertise and solicit such insurance until the commencement of this action; that during that time he received from the defendant from time to time printed matter for use and advertising purposes, including printed forms and rate books for his use in soliciting and taking applications for insurance in the defendant company; that during such time of his soliciting such insurance he took two applications, to wit: one from John Nelson and another from Frank Winding, from each of whom he collected at the time of taking such applications five dollars, from which he retained a commission of three dollars, and transmitted the balance, together with such applications, to the defendant at its said home office, and in due course of mail received from the defendant policies of insurance issued by it insuring said Nelson and Winding respectively, and which policies were delivered to them respectively by said Bombach; that no part of the money so sent to the defendant had ever been returned; that during said time said Bombach was so engaged soliciting insurance for the defendant, he advertised said business by posting up and distributing the circulars and printed matter sent to him by the defendant for that purpose.

The following is the full opinion of the court:

"Are the facts stated such as to make the service on Bombach good as against the defendant? In our judgment they are. The defendant is a foreign accident insurance corporation. It never procured a license to do business in this State as required by the statutes, §§ 1220 and 1953, R. S. It is provided by § 2637, R. S., that actions against corporations shall be commenced in the same manner as personal actions against

natural persons. The summons, etc., shall be served, and such service held of the same effect as personal service on a natural person, by delivering a copy thereof as follows: '. . . 9. If against any insurance corporation not organized under the laws of this State, to the agent or attorney thereof having authority therefor by appointment under the provisions of § 1915 or § 1953, *or to any agent* of such corporation within the definition of § 1977 in the State.' Here the summons could not have been served on the defendant by delivering a copy thereof to the agent or attorney appointed by the defendant under the provisions of § 1915 or § 1953, since no such appointment was ever made. It follows that such service could only be made by delivering such copy to an agent of the defendant, within the definition of § 1977, R. S. By that definition whoever solicits insurance on behalf of any insurance corporation, or transmits an application for insurance or a policy of insurance to or from any such corporation, or who makes any contract of insurance, or collects or receives any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business for any insurance corporation, or advertises to do any such thing, *shall be held an agent* of such corporation to all intents and purposes, and the word agent, whenever used in chapter 89, R. S., shall be construed to include all such persons. Sec. 1977, R. S.

"The several things thus enumerated are connected by disjunctives, so that the doing of any of them by Bombach would have made him the agent of the defendant within the definition. *The State* v. *Farmer*, 49 Wis. 459. The facts stated show that he did every one of them himself, unless it was to make the contract of insurance mentioned; and the facts stated show that he aided and assisted in making each of them, which, of itself, was enough to make him such agent within the definition.

"As to the commencement of actions, or service of process upon foreign insurance corporations, this is in no respect changed by c. 240, Laws of 1880, notwithstanding § 5 of that act is nearly in the same language of § 1977, R. S. It simply makes it a misdemeanor to act as such agent otherwise

than as prescribed. This was fully considered and determined in *The State* v. *The Northwestern Endowment & Legacy Association of Minnesota*, 62 Wis. 176–7. But here Bombach received a commission on each of the policies mentioned as issued by the defendant, and hence the question of his acting 'gratuitously,' there considered, is not here involved. By receiving and retaining such applications and premiums, and then issuing to the respective beneficiaries policies thereon, and then sending the same to Bombach for delivery, the defendant thereby ratified his agency.

"If the argument of counsel to the effect that § 1977 only relates to agents of such foreign insurance companies as are duly licensed to do business within the State is sound, then there would be no possible way of commencing an action against an unlicensed foreign insurance company doing business in this State in violation of law. In other words, such construction would reward such foreign insurance companies as refused to pay the requisite license, by enabling them to retain the license money and then shielding them from the enforcement of all liability, whether on their contracts or otherwise, in the courts of Wisconsin. Such construction would defeat the whole purpose and scope of the statute. Besides, such construction would restrict the application of the section wholly to home insurance companies and such foreign insurance corporations as procured the requisite license; whereas the language of the section is 'any insurance corporation,' 'any contract of insurance,' 'any premium for insurance,' 'any business for any insurance corporation,' and then enlarges the word 'agent' whenever used in other portions of the chapter so as to include 'all such persons' as are therein described. The chapter evidently applies to foreign insurance companies not having procured such license, as well as those who have. Thus § 1952 applies to 'every life or accident insurance corporation doing business in this State . . . upon the principle of mutual insurance.' Section 1953 applies to 'every life or accident insurance corporation not organized under the laws of this State.' Section 1954 applies to 'every life or accident insurance corporation doing business in this

State.' Manifestly it was not the intention of the legislature that the right of service of process upon foreign insurance companies doing business in this State should be dependent upon their first taking out a license."

The courts of other States have taken a similar view of similar statutes. *Gibbs* v. *Queen Insurance Company*, 63 N. Y. 114; *Pope* v. *Terre Haute, C. & M. Co.*, 87 N. Y. 137; *Osborn* v. *Shawmut Ins. Co.*, 51 Vt. 278; *McNichol* v. *U. S. Mercantile R. Assn.*, 74 Missouri, 457; *Swift* v. *The State of Delaware*, 25 Am. Law Reg. (N. S.) 594; *Lhoneux, Limon & Co.* v. *Hongkong & Shanghai Banking Co.*, 33 Ch. Div. 446.

Foreign insurance companies are not compelled to do business in this State. If they voluntarily choose to do so, however, they must submit to such conditions and restrictions as the legislature may see fit to impose. *Fire Department of Milwaukee* v. *Helfenstein*, 16 Wis. 136; *The State ex rel. Drake* v. *Doyle*, 40 Wis. 176.

In *Paul* v. *Virginia*, 8 Wall. 168, a person having acted as an agent of an insurance company doing business in that State without a license, under a similar act, was convicted and fined under the statute, and it was held that there had been no violation of sec. 2, art. 4, of the Constitution, providing that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States;" nor of section 8, art. 1, giving to the Congress the power to "regulate commerce with foreign nations and among the several States." In that case Mr. Justice Field, speaking of foreign insurance companies for the whole court, used this significant language: "Having no absolute right of recognition in other States, but depending for such recognition and enforcement of its contracts upon their assent, it follows as a matter of course that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." (page 181.) This lan-

guage was expressly sanctioned by the same learned court in *Ducat* v. *Chicago*, 10 Wall. 410; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566, and in the more recent case of *Philadelphia Fire Association* v. *New York*, 119 U. S. 117–8. The same language was quoted approvingly in the opinion of the court in *The State ex rel. Drake* v. *Doyle*, (pages 197–8) *supra*.

From these decisions it appears that by voluntarily doing business in the State the defendant voluntarily submitted itself to the laws of the State. From them it further appears that the question of interstate commerce is in no way involved in such a case, and hence it is distinguishable from *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S. 727, and other similar cases.

The defendant's right to impeach the sheriff's return by other evidence includes plaintiff's right to support such return by similar evidence. We conclude that the court got jurisdiction of the defendant by the service upon Bombach.

The question, however, is not before us as to just what subject-matter such jurisdiction may extend to. It is enough to know that there may be cases to which such jurisdiction extends. *Gauser* v. *Fireman's Fund Ins. Co.*, 34 Minn. 372, and cases there cited. *Ehrman* v. *Teutonia Ins. Co.*, 1 McCrary, 123; *Merchants' Manufacturing Co.* v. *Grand Trunk Railroad Co.*, 13 Fed. Rep. 358; *Gray* v. *Taper Sleeve Pulley Works*, 16 Fed. Rep. 437.

We also refer the court to *State* v. *Endowment and Legacy Association Company of Minnesota*, 62 Wis. 174, which is a case also interpretative of the statutes involved in this case, in which the holdings are in substance like those in the last preceding case, and is a case holding, also, that § 5 of c. 240 of Laws of 1880 does not repeal the ninth paragraph of § 2637 of the Revised Statutes of Wisconsin. These decisions of the Supreme Court of Wisconsin cover the entire subject-matter of the scope and effect of the Wisconsin statutes, and to the force of what the court there says we can add nothing by any argument.

Their effect is to hold that foreign insurance companies doing business in Wisconsin through agents in that State,

though not licensed, and though the foreign company omits to procure license, as required by §§ 1220 and 1953, are yet suable in Wisconsin. And this conclusion is reached by the court in full view of all the legislation of Wisconsin on the subject and of the decisions of this court in regard to when a foreign corporation consents to be sued in a State away from its residence.

We now turn to the decisions of this court upon the two questions above indicated, which are supposed to be presented by the demurrer, namely, the question whether this corporation, under the averments of the plea, is a "citizen of another State," within the sense of these words in § 2, art. 3, and in § 687 of the Revised Statutes; and, second, whether the defendant doing business in Wisconsin, under or in the face of the statutes of Wisconsin, has assented to being there sued.

That a corporation aggregate created by and transacting business in a State, is to be deemed a citizen of that State for all the purposes of suing and being sued, by citizens of other States, in the courts of the United States, is, of course, the settled law of this court.

The present doctrine of this court upon this subject is stated in *Paul* v. *Virginia*, 8 Wall. 168, 178, where the court, after stating that: "In the early cases, when this question of the right of corporations to litigate in the courts of the United States, was considered, it was held that the right depended upon the citizenship of the members of the corporation and its proper averment in the pleadings," adds, "In later cases this ruling was modified, and it was held that the members of that corporation would be *presumed* to be citizens of the State in which the corporation was created, and where alone it had any legal existence, without any special averment of such citizenship, the averment of the place of creation and business of the corporation being sufficient; and that such presumption *cannot be controverted* for the purposes of defeating the jurisdiction of the court." And the court cites *Railroad Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Railroad Co.*, 15 How. 314; *Drawbridge Co.* v. *Shepard*, 20 How. 227, 233; *Railroad Co.* v. *Wheeler*, 1 Black, 286, 297.

This doctrine has been repeated, by this court, in the same words, in numerous cases, as, for example, in *Steamship Company* v. *Tugman*, 106 U. S. 118, 120, 121, where the cases are cited.

The only question left, therefore, regarding the point as to whether the defendant, for the purposes of being sued, is a citizen of Louisiana, is this, namely, whether there is any *distinction* between the liability of a corporation to be sued in the Circuit Courts of the United States, as a " citizen of another State," under the laws defining the jurisdiction of the Circuit Court, and such corporation's liability to be sued, as a citizen of another State, under the constitutional provisions and statutes defining the original jurisdiction of this court, where such original jurisdiction is given in suits by a State against citizens of other States. We submit there is no distinction, which is applicable to the present case, in this regard.

In *Pennsylvania* v. *The Wheeling Bridge Company*, 13 How. 518, the State of Pennsylvania sued a foreign corporation of Virginia under the original jurisdiction of this court, and the jurisdiction was maintained.

The same case was again in this court in 18 How. 421, where the court held that the act of Congress of August 31, 1852, legalized the bridge, and superseded the effect of the former decree of this court declaring the bridge a nuisance.

We may remark, in passing, that this is a case where the original jurisdiction of this court was held to include actions and suits for *torts*, as distinguished from suits *ex contractu*.

In *Wisconsin* v. *Duluth*, 96 U. S. 379, this court entertained, as coming under its original jurisdiction, the suit of Wisconsin against a corporation foreign to the State of Wisconsin, to wit, Duluth, a corporation of the State of Minnesota, the suit being brought under the clause giving this court jurisdiction, where a State is plaintiff against the citizens of another State. In that case the Northern Pacific Railroad Company was made defendant along with Duluth, but it was dismissed before the hearing, and the court was not required to decide whether its original jurisdiction would extend to the Northern Pacific Railroad Company, a corporation created by act of

Congress; but the court maintained the jurisdiction against Duluth as being a "citizen of another" State than the State of Wisconsin, but dismissed the bill with costs, because the court held that it had no authority to prescribe the manner in which work, being done under the authority of a law of Congress, should be carried forward.

And see opinion of Justice Miller in the same case — 2 Dillon, 406 — where it is held that the Supreme Court *alone* of the federal courts, has this jurisdiction.

If the case at bar can be distinguished, on the point of the citizenship of the defendant, and of its liability to be sued as the citizen of another State under the original jurisdiction of this court, from the cases now cited, we are unable to perceive wherein that distinction is to be found; and we will await further discussion of the point to hear from the defendant's counsel.

We now, therefore, turn to the question whether or not the public laws of Wisconsin, of which this court will take judicial notice, bring the defendant within the class of cases where this court has held that suits may be maintained against foreign corporations, away from the State of the residence of the corporations, and in States where, by doing business, they consent to be sued. It would be a useless extension of argument to consider, in detail, the large number of cases decided by this court upon this point.

The general doctrine of this court, upon this subject, may be indicated by a quotation from the language of the court in *Insurance Co.* v. *Woodward*, 111 U. S. 138, 146, where the court says : " But the reason why the State, which charters a corporation, is its domicile in reference to debts which it owes, is because there only can it be sued or found for service of process. This is now *changed* in cases like the present ; and in the courts of the United States it is held that a corporation of one State, doing business in another State, is suable in the courts of the United States established in the latter State if the laws of that State so provide, and in the manner provided by those laws," citing *Lafayette Insurance Company* v. *French,* 18 How. 404; *Railroad Company* v. *Harris,* 12 Wall. 65;

*Ex parte Schollenberger*, 96 U. S. 369; *Railroad Company* v. *Koontz*, 104 U. S. 5, 10.

In the case of *St. Clair* v. *Cox*, 106 U. S. 350 *et seq.* this court reviews the state of the law upon the subject of the suability of a corporation in other States than the State of its creation and principal domicile, notices the inconvenience of the old doctrine, (that they could only be sued in the States of their principal residence,) owing to the great increase of corporation transactions away from the States of their residence, and holds that, wherever a corporation does business in States other than its home, and where this business is done under laws of the State providing for the bringing of suits against the corporation in such foreign State, and for serving process upon its agents, there the suit may be maintained.

In *Ex parte Schollenberger*, 96 U. S. 369, this court, in commenting upon the doctrine laid down in the case of *Railroad Company* v. *Harris*, 12 Wall. 65, places the suability of a corporation, in a jurisdiction foreign to that of its creation, upon the distinct ground that where the corporation does business in the foreign jurisdiction, when a statute exists authorizing a suit to be brought in such foreign jurisdiction against corporations doing business therein, then and thereby the corporation *consents* to being sued in such foreign jurisdiction.

In *Railroad Company* v. *Koontz*, 104 U. S. 510, the court says : " It is well settled that a corporation of one State doing business in another State is suable where its business is done, if the laws make provision to that effect ; and we have so held many times," citing *Insurance Company* v. *French*, 18 How. 404 ; *Railroad Company* v. *Harris*, 12 Wall. 65 ; *Ex parte Schollenberger*, 96 U. S. 369.

The authorities gone over establish our proposition that these provisions of the Wisconsin law are not inconsistent with the Constitution, or with public law, or with the mutual rights of the States. It may not be amiss, however, upon a question of this importance to submit to the court a further reference to authorities in the Circuit Courts of the United States, and in the courts of the States, in further enforcement

of the point that these provisions of the Wisconsin laws, for such method of bringing foreign corporations into her courts, to answer touching business done in the State, are valid.

In *Merchants' Manufacturing Company* v. *Grand Trunk Railway Co.*, 13 Fed. Rep. 358, in the Circuit Court of the United States for the Southern District of New York, in 1882, it was held (in accordance with *Insurance Company* v. *French, Railway Company* v. *Harris, Ex parte Schollenberger,*) that the fact of doing business in the State is an *assent* to the service of process upon agents there, in suits against foreign corporations; and the court there cites a long line of authorities holding that, even in the absence of statutes of the State authorizing such mode of service, suits may be maintained against foreign corporations in States where they engage in business, by service of process on those doing the business.

In *Mohr and Mohr Distilling Co.* v. *Insurance Companies*, 12 Fed. Rep. 474, decided in the Circuit Court of the United States for the Southern District of Ohio, by Justice Matthews, in June, 1882, the court reasserted the doctrines of this court above cited, and indicated that the consent implied from the doing of business, by a foreign corporation, in a State having laws providing for suits in the State where the business is done, is *not limited to causes of actions arising within the State, but extends to all transitory actions.*

In *Gray* v. *Taper-Sleeve Pulley Works*, 16 Fed. Rep. 436, the suit was in the Circuit Court of the United States for the Western District of Pennsylvania, decided in 1883; opinion by Acheson, J. In that case the same doctrines are reasserted, and the additional point is decided which is indicated by the following sentence from the opinion of the court, page 443 : " Suits may be instituted against a foreign corporation by service of process conformably to the act of 1849 (Pennsylvania), *notwithstanding it has failed to establish a place of business in the State and appoint an agent upon whom service may be made, agreeably to the state constitution and act of April 22, 1872.*" The court cites *Hagerman* v. *Empire State Company*, 97 Penn. St. 534.

The state decisions are innumerable which are to the same effect.

We have already cited the case of *Wisconsin* v. *Northwest Endowment and Legacy Association*, 62 Wis. 174.

The case of *Gibbs* v. *Queen Insurance Co.*, 63 N. Y. 114, (1875,) where the opinion is by Judge Folger, is to the same effect as the foregoing, but is valuable as presenting an elaborate review of the English and American authorities upon the general subject as to when a service upon an agent of a foreign corporation is not violative of the principles of the public law or of natural justice.

At the end of the opinion, page 131, Justice Folger alludes to the fact that *Insurance Company* v. *French*, 18 How. 404, was called to his attention after the preparation of his opinion, and the Justice remarks that this case of French *goes further than the court went in the case of Gibbs*. The Justice cites, in addition to the cases appearing in the body of the opinion, *Copin* v. *Adamson*, L. R. 9 Ex. 345; *Schibsby* v. *Westenholz*, L. R. 6 Q. B. 155.

The case of *Sadler* v. *Mobile Insurance Co.*, 60 Mississippi, 391, decided in 1882, is of value, in the present case, as presenting statutes quite equivalent to those of Wisconsin upon this subject, and also as indicating that the omission of the foreign company to take out license does not exempt it from liability in the foreign State where it does business. The case shows that statutes are not against natural justice or public law which broadly and generally make foreign corporations liable in the States where their business is done by any agent whose acts have been adopted as valid by such foreign corporation.

The case of *Farmers' Insurance Co.* v. *Highsmith*, 44 Iowa, 330, decided in 1876, is one where the court holds that the service need not be upon the *general* agent of the foreign corporation, but may be upon any insurance agent who solicits risks and forwards them to the company.

In *Osborne* v. *Shawmut Insurance Co.*, 51 Vermont, 278, decided in 1878, the same doctrine was asserted, and it was also held that it made no difference that the plaintiff was not a resident of the State where the Insurance Company did business, and where the suit was brought.

The case of *McNichol* v. *United States Mercantile Reporting Agency*, 74 Missouri, 457, decided in 1881, contains a valuable review of the authorities upon this subject, and sustains alike all the principles which are so often asserted by this court, that laws which provide for service of process on recognized agents of a foreign corporation are not *against public law, or against justice, or against the Constitution,* and are reasonable, and have been adopted because citizens doing business with foreign corporations, if obliged to go to the State of the residence of the corporation, would be without redress. (See pages 474 *et seq.*)

These cases, and others that might be cited, firmly establish, as the doctrine of this court, that wherever the laws of a State provide that foreign corporations, doing business in the State, shall be suable in such State by process served in a prescribed manner, there the doing of business in such State is a consent to be sued according to the laws existing at the time the business is done; and hence this court cannot fail to perceive that it was *possible* for the courts of the State of Wisconsin to acquire jurisdiction of the defendant for the purpose of rendering the judgment which is sued in this case. Hence the first plea discloses no facts showing that it was not possible for the court to acquire the jurisdiction which was exercised in rendering said judgment; and the plea, therefore, is bad, in failing to disclose any facts showing that no jurisdiction *in fact* existed.

Only one additional point need to be here noticed:

It may be argued that the record discloses that the defendant never took out license to do business in Wisconsin, as provided by her statutes. This fact does not appear *in the record in this case.* The showing made by the plaintiff for leave to file the present petition *is no part of the record of the present case.* The record proper begins with the leave of this court to file the declaration, and with its filing. Anything *outside* of what is disclosed subsequently to the leave of this court is *de hors* the record.

But, assuming that the court knows that the defendant never took out license, and that the judgment below was for

forfeitures incurred on account of doing business in Wisconsin in defiance of her laws, then, still, that fact does not affect the present issue.

Upon the point that the defendant is still liable for the penalties incurred by doing business in Wisconsin without complying with the license laws of the State, we refer this court to what is said upon this point in the opinion of the court (*supra*) in the case of *Wisconsin* v. *Accident Insurance Co.* The argument of the court there found seems to us conclusive upon the subject. See, also, *Ithaca Fire Department* v. *Beecher*, 99 N. Y. 429; *Ehrman* v. *Teutonia Ins. Co.*, 1 McCrary, 123; and the following cases cited by the court in that case: *Insurance Co.* v. *McMillen*, 24 Ohio St. 67; *Clay Fire Insurance Co.* v. *Huron Salt &c. Co.*, 31 Mich. 346; *Columbus Insurance Co.* v. *Walsh*, 18 Missouri, 229; *Lamb* v. *Bowser*, 7 Bissell, 315, 372; *Hartford Insurance Co.* v. *Matthews*, 102 Mass. 221.

In the light of these authorities, we submit that it is conclusively established that even if this court, in trying this demurrer, can look outside of the record proper, and can see that the court below rendered the judgment, which is the foundation of the present action, for penalties incurred by a company which had never taken out license in the State of Wisconsin, yet that fact is immaterial, because it did not deprive the court below of jurisdiction to render the judgment which was rendered. This is so, because the business done in the State was valid, and operated as assent to be sued in Wisconsin.

*Mr. John A. Campbell* for defendant.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

This action is brought upon a judgment recovered by the State of Wisconsin in one of her own courts against the Pelican Insurance Company, a Louisiana corporation, for penalties imposed by a statute of Wisconsin for not making returns to

the insurance commissioner of the State, as required by that statute. The leading question argued at the bar is whether such an action is within the original jurisdiction of this court.

The ground on which the jurisdiction is invoked is not the nature of the cause, but the character of the parties, the plaintiff being one of the States of the Union, and the defendant a corporation of another of those States.

The Constitution of the United States, as originally established, ordains in art. 3, sect. 2, that the judicial power of the United States shall extend "to controversies between two or more States, between a State and citizens of another State, between citizens of different States, between citizens of the same State claiming lands under grants of different States, and between a State, or the citizens thereof, and foreign States, citizens or subjects;" and that in all cases "in which a State shall be party" this court shall have original jurisdiction. The Eleventh Article of Amendment simply declares that "the judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State."

By the Constitution, therefore, this court has original jurisdiction of suits brought by a State against citizens of another State, as well as of controversies between two States; and it is well settled that a corporation created by a State is a citizen of the State, within the meaning of those provisions of the Constitution and statutes of the United States which define the jurisdiction of the federal courts. *Kansas Pacific Railroad* v. *Atchison &c. Railroad*, 112 U. S. 414; *Paul* v. *Virginia*, 8 Wall. 168, 178; *Pennsylvania* v. *Wheeling Bridge*, 13 How. 518.

Yet, notwithstanding the comprehensive words of the Constitution, the mere fact that a State is the plaintiff is not a conclusive test that the controversy is one in which this court is authorized to grant relief against another State or her citizens; and a consideration of the cases in which it has heretofore had occasion to pass upon the construction and effect of these provisions of the Constitution may throw light on the determination of the question before us.

As to " controversies between two or more States." The most numerous class of which this court has entertained jurisdiction is that of controversies between two States as to the boundaries of their territory, such as were determined before the Revolution by the King in Council, and under the Articles of Confederation (while there was no national judiciary) by committees or commissioners appointed by Congress. Story on the Constitution, § 1681 ; *New Jersey* v. *New York*, 3 Pet. 461 ; 5 Pet. 284 ; 6 Pet. 323 ; *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 724, 736, 759 ; 13 Pet. 23 ; 14 Pet. 210 ; 15 Pet. 233 ; 4 How. 591, 628 ; *Missouri* v. *Iowa*, 7 How. 660, and 10 How. 1 ; *Florida* v. *Georgia*, 17 How. 478 ; *Alabama* v. *Georgia*, 23 How. 505 ; *Virginia* v. *West Virginia*, 11 Wall. 39 ; *Missouri* v. *Kentucky*, 11 Wall. 395. See also *Georgia* v. *Stanton*, 6 Wall. 50, 72, 73.

The books of reports contain but few other cases in which the aid of this court has been invoked in controversies between two States.

In *Fowler* v. *Lindsey* and *Fowler* v. *Miller*, actions of ejectment were pending in the Circuit Court of the United States for the District of Connecticut between private citizens for lands over which the States of Connecticut and New York both claimed jurisdiction; and a writ of *certiorari* to remove those actions into this court as belonging exclusively to its jurisdiction was refused, because a State was neither nominally nor substantially a party to them. 3 Dall. 411. Upon a bill in equity afterwards filed in this court by the State of New York against the State of Connecticut to stay the actions of ejectment, this court refused the injunction prayed for, because the State of New York was not a party to them, and had no such interest in their decision as would support the bill. *New York* v. *Connecticut*, 4 Dall. 1, 3.

This court has declined to take jurisdiction of suits between States to compel the performance of obligations which, if the States had been independent nations, could not have been enforced judicially, but only through the political departments of their governments. Thus, in *Kentucky* v. *Dennison*, 24 How. 66, where the State of Kentucky, by her governor, ap-

plied to this court in the exercise of its original jurisdiction for a writ of mandamus to the governor of Ohio to compel him to surrender a fugitive from justice, this court, while holding that the case was a controversy between two States, decided that it had no authority to grant the writ. And in *New Hampshire* v. *Louisiana* and *New York* v. *Louisiana*, 108 U. S. 76, it was adjudged that a State, to whom, pursuant to her statutes, some of her citizens, holding bonds of another State, had assigned them in order to enable her to sue on and collect them for the benefit of the assignors, could not maintain a suit against the other State in this court. See also *Cherokee Nation* v. *Georgia*, 5 Pet. 1, 20, 28, 51, 75.

In *South Carolina* v. *Georgia*, 93 U. S. 4, this court, speaking by Mr. Justice Strong, left the question open, whether "a State, when suing in this court for the prevention of a nuisance in a navigable river of the United States, must not aver and show that it will sustain some special and peculiar injury therefrom, such as would enable a private person to maintain a similar action in another court;" and dismissed the bill, because no unlawful obstruction of navigation was proved. 93 U. S. 14.

As to "controversies between a State and citizens of another State." The object of vesting in the courts of the United States jurisdiction of suits by one State against the citizens of another was to enable such controversies to be determined by a national tribunal, and thereby to avoid the partiality, or suspicion of partiality, which might exist if the plaintiff State were compelled to resort to the courts of the State of which the defendants were citizens. Federalist, No. 80; Chief Justice Jay, in *Chisholm* v. *Georgia*, 2 Dall. 419, 475; Story on the Constitution, §§ 1638, 1682. The grant is of "judicial power," and was not intended to confer upon the courts of the United States jurisdiction of a suit or prosecution by the one State, of such a nature that it could not, on the settled principles of public and international law, be entertained by the judiciary of the other State at all.

By the law of England and of the United States, the penal laws of a country do not reach beyond its own territory,

except when extended by express treaty or statute to offences committed abroad by its own citizens; and they must be administered in its own courts only, and cannot be enforced by the courts of another country. Wheaton's International Law (8th ed.) §§ 113, 121.

Chief Justice Marshall stated the rule in the most condensed form, as an incontrovertible maxim, "The courts of no country execute the penal laws of another." *The Antelope*, 10 Wheat. 66, 123.

The only cases in which the courts of the United States have entertained suits by a foreign State have been to enforce demands of a strictly civil nature. *The Sapphire*, 11 Wall. 164; *King of Spain* v. *Oliver*, 2 Wash. C. C. 429, and Pet. C. C. 217, 276. The case of *The Sapphire* was a libel in admiralty, filed by the late Emperor of the French, and prosecuted by the French Republic after his deposition, to recover damages for a collision between an American ship and a French transport; and Mr. Justice Bradley, delivering the judgment of this court sustaining the suit, said: "A foreign sovereign, as well as any other foreign person, who has a demand of a civil nature against any person here, may prosecute it in our courts." 11 Wall. 167. The case of *The King of Spain* v. *Oliver*, although a suit to recover duties imposed by the revenue laws of Spain, was not founded upon those laws, or brought against a person who had broken them, but was in the nature of an action of assumpsit against other persons alleged to be bound by their own contract to pay the duties; and the action failed because no express or implied contract of the defendants was proved. Pet. C. C. 286, 290.

The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties. If this were not so, all that would be necessary to give ubiquitous effect to a penal law would be to put the claim for a penalty into the shape of a judgment. Wharton's Conflict of Laws, § 833;

Westlake's International Law (1st ed.), § 388 : Piggott on For-
eign Judgments, 209, 210.

Lord Kames, in his Principles of Equity, cited and approved
by Mr. Justice Story in his Commentaries on the Conflict of
Laws, after having said, " The proper place for punishment is
where the crime is committed, and no society takes concern
in any crime but what is hurtful to itself ; " and recognizing
the duty to enforce foreign judgments or decrees for civil
debts or damages ; adds, " But this includes not a decree de-
cerning for a penalty ; because no court reckons itself bound to
punish, or to concur in punishing, any delict committed *extra
territorium.*"   2 Kames on Equity (3d ed.) 326, 366 ; Story's
Conflict of Laws, §§ 600, 622.

It is true that if the prosecution in the courts of one country
for a violation of its municipal law is *in rem*, to obtain a for-
feiture of specific property within its jurisdiction, a judgment
of forfeiture, rendered after due notice, and vesting the title
of the property in the State, will be recognized and upheld in
the courts of any other country in which the title to the prop-
erty is brought in issue.   *Rose* v. *Himely*, 4 Cranch, 241 ;
*Hudson* v. *Guestier*, 4 Cranch, 293 ; *Bradstreet* v. *Neptune
Ins. Co.*, 3 Sumner, 600, 605 ; Pigott on Foreign Judgments,
264.   But the recognition of a vested title in property is quite
different from the enforcement of a claim for a pecuniary
penalty.   In the one case, a complete title in the property has
been acquired by the foreign judgment ; in the other, further
judicial action is sought to compel the payment by the defend-
ant to the plaintiff of money in which the plaintiff has not as
yet acquired any specific right.

The application of the rule to the courts of the several
States and of the United States is not affected by the provis-
ions of the Constitution and of the act of Congress, by which
the judgments of the courts of any State are to have such
faith and credit given to them in every court within the
United States as they have by law or usage in the State in
which they were rendered.   Constitution, art. 4, sect. 1 ; Act
of May 26, 1790, c. 11, 1 Stat. 122 ; Rev. Stat. § 905.

Those provisions establish a rule of evidence, rather than of

jurisdiction. While they make the record of a judgment, rendered after due notice in one State, conclusive evidence in the courts of another State, or of the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence. Judgments recovered in one State of the Union, when proved in the courts of another government, whether state or national, within the United States, differ from judgments recovered in a foreign country in no other respect than in not being reëxaminable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties. *Hanley* v. *Donoghue*, 116 U. S. 1, 4.

In the words of Mr. Justice Story, cited and approved by Mr. Justice Bradley speaking for this court, "The Constitution did not mean to confer any new power upon the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of other States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can issue upon such judgments without a new suit in the tribunals of other States. And they enjoy not the right of priority or lien which they have in the State where they are pronounced, but that only which the *lex fori* gives to them by its own laws in their character of foreign judgments." Story's Conflict of Laws, § 609; *Thompson* v. *Whitman*, 18 Wall. 457, 462, 463.

A judgment recovered in one State, as was said by Mr. Justice Wayne, delivering an earlier judgment of this court, "does not carry with it, into another State, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another State, it must be made a judgment there; and can only be executed in the latter as its laws may permit." *McElmoyle* v. *Cohen*, 13 Pet. 312, 325.

The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the

technical rules, which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court, to which a judgment is presented for affirmative action, (while it cannot go behind the judgment for the purpose of examining into the validity of the claim,) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it. *Louisiana* v. *New Orleans*, 109 U. S. 285, 288, 291; *Louisiana* v. *St. Martin's Parish*, 111 U. S. 716; *Chase* v. *Curtis*, 113 U. S. 452, 464; *Boynton* v. *Ball*, 121 U. S. 457, 466.

The only cases cited in the learned argument for the plaintiff, which tend to support the view that the courts of one State will maintain an action upon a judgment rendered in another State for a penalty incurred by a violation of her municipal laws, are *Spencer* v. *Brockway*, 1 Ohio, 259, in which an action was sustained in Ohio upon a judgment rendered in Connecticut upon a forfeited recognizance to answer for a violation of the penal laws of that State; *Healy* v. *Root*, 11 Pick. 389, in which an action was sustained in Massachusetts upon a judgment rendered in Pennsylvania in a *qui tam* action on a penal statute for usury; and *Indiana* v. *Helmer*, 21 Iowa, 370, in which an action by the State of Indiana was sustained in the courts of Iowa upon a judgment rendered in Indiana in a prosecution for the maintenance of a bastard child.

The decision in each of those cases appears to have been mainly based upon the supposed effect of the provisions of the Constitution and the act of Congress as to the faith and credit due to a judgment rendered in another State, which had not then received a full exposition from this court; and the other reasons assigned are not such as to induce us to accept those decisions as satisfactory precedents to guide our judgment in the present case.

From the first organization of the courts of the United States, nearly a century ago, it has always been assumed that the original jurisdiction of this court over controversies between a State and citizens of another State, or of a foreign

country, does not extend to a suit by a State to recover penalties for a breach of her own municipal law. This is shown both by the nature of the cases in which relief has been granted or sought, and by acts of Congress and opinions of this court more directly bearing upon the question.

The earliest controversy in this court, so far as appears by the reports of its decisions, in which a State was the plaintiff, is that of *Georgia* v. *Brailsford*.

At February term, 1792, the State of Georgia filed in this court a bill in equity against Brailsford, Powell and Hopton, British merchants and copartners, alleging that on August 4, 1782, during the Revolutionary War, the State of Georgia enacted a law, confiscating to the State all the property within it (including debts due to British merchants or others residing in Great Britain) of persons who had been declared guilty or convicted, in one or other of the United States, of offences which induced a like confiscation of their property within the States of which they were citizens; and also sequestering, and directing to be collected for the benefit of the State, all debts due to merchants or others residing in Great Britain, and confiscating to the State all the property belonging and debts due to subjects of Great Britain; and that by the operation of this law all the debts due from citizens of Georgia to persons who had been subjected to the penalties of confiscation in other States, and of British merchants and others residing in Great Britain, and of all other British subjects, were vested in the State of Georgia. The bill further alleged that one Spalding, a citizen of Georgia, was indebted to the defendants upon a bond, which by virtue of this law was transferred from the obligees and vested in the State; that Brailsford was a citizen of Great Britain, and resided there from 1767 till after the passing of the law, and that Hopton's and Powell's property (debts excepted) had been confiscated by acts of the legislature of South Carolina; that Brailsford, Hopton and Powell had brought an action and recovered judgment against Spalding upon this bond, and had taken out execution against him, in the Circuit Court of the United States for the District of Georgia, and that the parties to that

action had confederated together to defraud the State. Upon the filing of the bill, this court, without expressing any opinion upon the merits of the case, granted a temporary injunction to stay the money in the hands of the marshal of the Circuit Court, until the title to the bond as between the State of Georgia and the defendants could be tried. 2 Dall. 402.

At February term, 1793, upon a motion to dissolve that injunction, this court held that if the State of Georgia had the title in the debt (upon which no opinion was then expressed) she had an adequate remedy at law, by action upon the bond; but, in order that the money might be kept for the party to whom it belonged, ordered the injunction to be continued till the next term, and, if Georgia should not then have instituted her action at common law, to be dissolved. 2 Dall. 415.

Such an action was brought accordingly, and was tried by a jury at the bar of this court at February term, 1794, when the court was of opinion, and so charged the jury, that the act of the State of Georgia did not vest the title in the debt in the State at the time of passing it, and that by the terms of the act the debt was not confiscated, but only sequestered, and the right of the obligees to recover it revived on the treaty of peace; and the jury returned a verdict for the defendants. 3 Dall. 1.

It thus appears that in *Georgia* v. *Brailsford* the State did not sue for a penalty, or upon a judgment for a penalty, imposed by a municipal law, but to assert a title, claimed to have absolutely vested in her, not under an ordinary act of municipal legislation, but by an act of war, done by the State of Georgia as one of the United States (the Congress of which had not then been vested with the power of legislating to that effect) to assist them against their common enemy by confiscating the property of his subjects; and that the only point decided by this court, except as to matters of procedure, was that the title had not vested in the State of Georgia by the act in question.

In *Pennsylvania* v. *Wheeling Bridge*, 13 How. 518, this court, upon a bill in equity by the State of Pennsylvania against a corporation of Virginia, ordered the taking down or

heightening of a bridge built by the defendant over the Ohio River, under a statute of Virginia, which the court held to have obstructed the navigation of the river, in violation of a compact of the State, confirmed by act of Congress. 13 How. 561. See also *Willamette Bridge* v. *Hatch*, 125 U. S. 1, 15, 16. All the judges who took part in the decision in the *Wheeling Bridge Case* treated the suit as brought to protect the property of the State of Pennsylvania. Mr. Justice McLean, delivering the opinion of the majority of the court, said: "In the present case, the State of Pennsylvania claims nothing connected with the exercise of its sovereignty. It asks from the court a protection of its property on the same ground and to the same extent as a corporation or individual may ask it." 13 How. 560, 561. So Chief Justice Taney, who dissented from the judgment, said: "She proceeds, and is entitled to proceed, only for the private and particular injury to her property which this public nuisance has occasioned." 13 How. 589. And Mr. Justice Daniel, the other dissenting judge, took the same view. 13 How. 596.

*Mississippi* v. *Johnson*, 4 Wall. 475, and *Georgia* v. *Stanton*, 6 Wall. 50, were cases of unsuccessful attempts by a State, by a bill in equity against the President or the Secretary of War, described as a citizen of another State, to induce this court to restrain the defendant from executing, in the course of his official duty, an act of Congress alleged to unconstitutionally affect the political rights of the State.

*Texas* v. *White*, 7 Wall. 700, *Florida* v. *Anderson*, 91 U. S. 667, and *Alabama* v. *Burr*, 115 U. S. 413, were suits to protect rights of property of the State. In *Texas* v. *White*, the bill was maintained to assert the title of the State of Texas to bonds belonging to her, and held by the defendants, citizens of other States, under an unlawful negotiation and transfer of the bonds. In *Florida* v. *Anderson*, the suit concerned the title to a railroad, and was maintained because the State of Florida was the holder of bonds secured by a statutory lien upon the road, and had an interest in an internal improvement fund pledged to secure the payment of those bonds. In *Alabama* v. *Burr*, the object of the suit was to indemnify the

State of Alabama against a pecuniary liability which she alleged that she had incurred by reason of fraudulent acts of the defendants; and upon the facts of the case the bill was not maintained.

In *Pennsylvania* v. *Quicksilver Co.*, 10 Wall. 533, an action brought in this court by the State of Pennsylvania was dismissed for want of jurisdiction, without considering the nature of the claim, because the record did not show that the defendant was a corporation created by another State.

In *Wisconsin* v. *Duluth*, 96 U. S. 379, the bill sought to restrain the improvement of a harbor on Lake Superior, according to a system adopted and put in execution under authority of Congress, and was for that reason dismissed, without considering the general question whether a State, in order to maintain a suit in this court, must have some proprietary interest that has been affected by the defendant.

The cases heretofore decided by this court in the exercise of its original jurisdiction have been referred to, not as fixing the outermost limit of that jurisdiction, but as showing that the jurisdiction has never been exercised, or even invoked, in any case resembling the case at bar.

The position that the jurisdiction conferred by the Constitution upon this court, in cases to which a State is a party, is limited to controversies of a civil nature, does not depend upon mere inference from the want of any precedent to the contrary, but has express legislative and judicial sanction.

By the Judiciary Act of September 24, 1789, c. 20, § 13, it was enacted that "the Supreme Court shall have exclusive jurisdiction of controversies of a civil nature, where a State is a party, except between a State and its citizens; and except also between a State and citizens of other States, or aliens, in which latter case it shall have original but not exclusive jurisdiction." 1 Stat. 80. That act, which has continued in force ever since, and is embodied in § 687 of the Revised Statutes, was passed by the first Congress assembled under the Constitution, many of whose members had taken part in framing that instrument, and is contemporaneous and weighty evidence of its true meaning. *Ames* v. *Kansas*, 111 U. S. 449, 463, 464.

In *Chisholm* v. *Georgia*, 2 Dall. 419, decided at August term, 1793, in which the judges delivered their opinions *seriatim*, Mr. Justice Iredell, who spoke first, after citing the provisions of the original Constitution, and of § 13 of the Judiciary Act of 1789, said: "The Constitution is particular in expressing the parties who may be the objects of the jurisdiction in any of these cases, but, in respect to the subject matter upon which such jurisdiction is to be exercised, uses the word 'controversies' only. The act of Congress more particularly mentions *civil* controversies, a qualification of the general word in the Constitution, which I do not doubt every reasonable man will think was well warranted, for it cannot be presumed that the general word 'controversies' was intended to include any proceedings that relate to criminal cases, which, in all instances that respect the same government only, are uniformly considered of a local nature, and to be decided by its particular laws." 2 Dall. 431, 432. None of the other judges suggested any doubt upon this point; and Chief Justice Jay, in summing up the various classes of cases to which the judicial power of the United States extends, used "demands" (a word quite inappropriate to designate criminal or penal proceedings) as including everything that a State could prosecute against citizens of another State in a national court. 2 Dall. 475.

In *Cohens* v. *Virginia*, 6 Wheat. 264, decided at October term, 1821, Chief Justice Marshall, after showing that the Constitution had given jurisdiction to the courts of the Union in two classes of cases, in one of which, comprehending cases arising under the Constitution, laws and treaties of the United States, the jurisdiction depended on the character of the cause, and in the other, comprehending controversies between two or more States, or between a State and citizens of another State, the jurisdiction depended entirely on the character of the parties, said: "The original jurisdiction of the Supreme Court, in cases where a State is a party, refers to those cases in which, according to the grant of power made in the preceding clause, jurisdiction might be exercised in consequence of the character of the party, and an original suit might be in-

stituted in any of the federal courts; not to those cases in which an original suit might not be instituted in a federal court. Of the last description is every case between a State and its citizens, and perhaps every case in which a State is enforcing its penal laws. In such cases, therefore, the Supreme Court cannot take original jurisdiction." 6 Wheat. 398, 399.

The soundness of the definition, given in the Judiciary Act of 1789, of the cases coming within the original jurisdiction of this court by reason of a State being a party, as " controversies of a civil nature," was again recognized by this court in *Rhode Island* v. *Massachusetts,* decided at January term. 1838. 12 Pet. 657, 722, 731.

The statute of Wisconsin, under which the State recovered in one of her own courts the judgment now and here sued on, was in the strictest. sense a penal statute, imposing a penalty upon any insurance company of another State, doing business in the State of Wisconsin without having deposited with the proper officer of the State a full statement of its property and business during the previous year. Wisconsin Rev. Stat. § 1920. The cause of action was not any private injury, but solely the offence committed against the State by violating her law. The prosecution was in the name of the State, and the whole penalty, when recovered, would accrue to the State, and be paid, one half into her treasury, and the other half to her insurance commissioner, who pays all expenses of prosecuting for and collecting such forfeitures. Wisconsin Stat. 1885, c. 395. The real nature of the case is not affected by the forms provided by the law of the State for the punishment of the offence. It is immaterial whether, by the law of Wisconsin, the prosecution must be by indictment or by action; or whether, under that law, a judgment there obtained for the penalty might be enforced by execution, by *scire facias,* or by a new suit. In whatever form the State pursues her right to punish the offence against her sovereignty, every step of the proceeding tends to one end, the compelling the offender to pay a pecuniary fine by way of punishment for the offence.

This court, therefore, cannot entertain an original action to compel the defendant to pay to the State of Wisconsin a sum of money in satisfaction of the judgment for that fine.

The original jurisdiction of this court is conferred by the Constitution, without limit of the amount in controversy, and Congress has never imposed (if indeed it could impose) any such limit. If this court has original jurisdiction of the present case, it must follow that any action upon a judgment obtained by a State in her own courts against a citizen of another State for the recovery of any sum of money, however small, by way of a fine for any offence, however petty, against her laws, could be brought in the first instance in the Supreme Court of the United States. That cannot have been the intention of the Convention in framing, or of the people in adopting, the Federal Constitution.

*Judgment for the defendant on the demurrer.*