DEY et al., Railroad Commissioners, v. CHICAGO, M. & ST. P. RY. Co.

*(Circuit Court, N. D. Iowa, E. D.   February 12, 1891.)*

REMOVAL OF CAUSES—JURISDICTION—RAILROAD COMMISSION.

 A suit brought by the state railroad commissioners to compel a railway company to obey the regulations of the commissioners cannot be removed to the federal courts, even though the parties are citizens of different states, and the answer raises a federal question, since such a suit, being in effect an attempt by the state to execute its laws, could not have been originally brought in a federal court.

In Equity.   On motion to remand.
Bill to enforce orders of the railroad commissioners of Iowa.
*John Y. Stone*, Atty. Gen., and *Fouke & Lyon*, for complainants.
*John W. Carey*, for defendant.

SHIRAS, J.   The statutes of the state of Iowa provide for the election of three persons to constitute "the board of railroad commissioners of the state of Iowa," and among other powers and duties conferred upon them it is provided that "said commissioners shall have the general supervision of all railroads in the state operated by steam, and shall inquire into any neglect or violation of the laws of this state by any railroad corporation doing business therein," etc.   It is further enacted that any person, firm, or corporation complaining of anything done or omitted to be done by any common carrier, subject to the provisions of the statute, may apply to the commissioners by petition, setting forth the wrongs complained of; and it is made the duty of the board to investigate such complaint, and to make a report in writing thereon of the facts in the premises, and the order made thereon by the board, a copy of which is required to be served upon the common carrier, and if the carrier refuses or neglects to obey the order or requirement of the board, then it is made the duty of the commissioners to apply, by petition, to the district or superior court in the county wherein the principal office of the common carrier is kept, or of any county in which the road is operated, for the entry of a decree against the carrier for the enforcement of the order of the board.   Provision is made for giving notice to the company of such application, for the taking testimony and hearing in a summary way; and for the issuance of writs of injunction or other process for compelling obedience to the order of the board, in case the same is affirmed, and for the imposition of fines, in case of disobedience to the injunction issued, which fines, upon order of the court, are to be paid into the county treasury, and one-half thereof is then to be paid by the county treasurer to the state treasurer.

Acting under the provisions of this statute, one E. J. Little, of Lima, Ohio, representing the Niagara Fuel Company of that place, filed a complaint before the board of commissioners of Iowa, alleging that the defendant company had wrongfully refused to transport certain tanks of oil from the station of the Chicago, St. Paul & Kansas City Railway Company in Dubuque to Eagle Point, where was situated the place of busi-

ness of the consignees of the oil, the same being within the corporate limits of the city of Dubuque, Iowa, and upon the line of the defendant company, the said tanks of oil having been forwarded from Lima, Ohio. Notice of the filing of this complaint before the commissioners was given to the railway company, and an answer filed by it, setting forth, among other things, that the transportation of the oil in question was a matter of interstate commerce, and not subject to the order or control of the board of commissioners of the state of Iowa.    One of the matters in controversy was whether the transportation of the tank cars from the depot of the Chicago, St..Paul & Kansas City road in Dubuque to Eagle Point, likewise in Dubuque, was a switching service, to be paid for at the rate established by the commissioners for such service, or was part of the original transportation from Lima, Ohio, in such sense that the defendant company stood in the relation of a connecting company with the Chicago, St. Paul & Kansas City road.    Upon the hearing the commissioners held that the contract of the Chicago, St. Paul & Kansas City company was to forward the tank cars to Dubuque; that this contract was fulfilled when the cars reached the depot of that company in Dubuque; that the transportation of the cars from that depot to the place of business of the consignees at Eagle Point, a distance of about three miles, was merely a switching service, and for the performance thereof the Chicago, Milwaukee & St. Paul Railway Company was entitled to charge the rates fixed for such service by the commissioners, and no more.    The company refusing to obey the order made, the board of commissioners filed a petition in the district court of Dubuque county, for the purpose of procuring a decree requiring and compelling the company to obey the order named.    To this petition the company filed its answer, setting up, among other things, that the transportation of the cars in question was a matter of interstate commerce, and therefore not within the jurisdiction of the board of railroad commissioners of the state of Iowa, and thereupon filed its petition to remove the cause into the federal court, setting forth therein that the controversy is wholly between citizens of different states, the defendant being a corporation created under the laws of the state of Wisconsin and the complainants being all citizens of Iowa; that the matter involved exceeds in amount, exclusive of costs and interest, the sum of $2,000, and that the case presents questions arising under the constitution and laws of the United States, necessary to be heard and determined in the disposition of the cause. The transcript having been filed in this court, thereupon the complainants filed a motion to remand, on several grounds.    Upon the argument of this motion the court suggested that it would hear counsel upon the question whether, admitting that the record showed that a federal question was involved, cases of this nature come within the jurisdiction of this court, so as to authorize a removal thereof for the purposes of an original trial; and, the briefs of counsel having been submitted, this question is now to be determined.

Upon part of the defendant it is submitted that the controversy is civil as distinguished from a criminal proceeding; that it is between citi-

zens of different states; that it involves over $2,000 in amount; and that
therefore it is brought clearly within the provisions of the removal stat-
ute. If by reason of these facts the case is a removable one, then it
could have been brought originally in this court, because the statute, in
express terms, confers the right of removal, on the ground of diverse citi-
zenship, only in cases which, under the first section of the act, might
have been originally brought in a circuit court of the United States.
The real question to be solved is therefore whether a circuit court of the
United States can entertain jurisdiction of a proceeding brought under
the provisions of the state statute to enforce by decree the orders made
by the board of railroad commissioners, touching the management and
operation of the railways within the state of Iowa. In determining
whether jurisdiction in the federal court exists, regard must be had, not
only to the form of the particular proceeding, but also to the nature,
source, and purpose of the right sought to be enforced, and if it appears
that the controversy, in substance, involves a matter not within the fed-
eral jurisdiction, then the court must refuse to entertain it, even though
in mere form the suit may be between citizens of different states, and
for an amount exceeding the jurisdictional limit named in the statute.
Thus, in *Wisconsin* v. *Insurance Co.*, 127 U. S. 265-292, 8 Sup. Ct.
Rep. 1370, it is said by the supreme court that "the essential nature
and real foundation of a cause of action are not changed by recovering a
judgment upon it; and the technical rules, which regard the original
claim as merged in the judgment, and the judgment as implying a prom-
ise by the defendant to pay it, do not preclude a court, to which a judg-
ment is presented for affirmative action, (while it cannot go behind the
judgment for the purpose of examining into the validity of the claim,)
from ascertaining whether the claim is really one of such a nature that
the court is authorized to enforce it." In that case an action was
brought originally in the supreme court of the United States by the state
of Wisconsin against the Pelican Insurance Company of Louisiana, upon
a judgment rendered in the circuit court of Dane county, Wis., against
the insurance company, for the sum of $8,500 and costs. The form of
the action was civil, being in debt upon the judgment record, but the
supreme court, looking beyond the mere form of the action, found that
the judgment sued on was for fines assessed against the insurance com-
pany for violations of the statutes of Wisconsin regulating the business
of insurance within the state, and refused to entertain jurisdiction.
While the ultimate judgment of the court in that case is placed upon the
ground that "the courts of no country execute the penal laws of another,"
yet is it not entirely clear, from the line of reasoning pursued, that if the
state of Wisconsin had filed a bill in equity in the supreme court of the
United States against the insurance company, for the purpose of com-
pelling obedience to some requirement of the state statute regulating the
business of insurance within the state, the court would have held ad-
versely to the jurisdiction, on the ground that courts of the United States
are not clothed with jurisdiction to undertake the ordinary administration
of the laws of the several states regulating matters of purely state con-

cern? In the enactment of the statutes regulating the railway business of the state it is the sovereign power of the state that is the foundation of the authority to enact the statute. The establishment and maintenance of the public highways of the country is a governmental duty, and railways are only the modern or improved highway furnished for the transportation of passengers and property over the same. Although the construction and operation of the railways within the state has been intrusted to corporations, yet that fact does not deprive the state of the power to supervise the operation of the railways, nor relieve it of the duty of so controlling the management thereof as to secure to the public the use of such highways in such a manner as to fulfill the purpose for which the state authorized their construction. In the building, maintenance, and operation of the railway system of the state there was and is, of necessity, exercised powers of a sovereign or governmental nature. Such are the right of eminent domain and of taxation; and while the formal proceedings for the exercise of these powers may have been had in the name of a particular corporation, nevertheless the power set in motion thereby was that of the sovereign state, and its nature was not changed by the mere form of the means employed to call it into action. The taking of private property in the location and construction of a railway, in the first instance, can only be sustained under the power of eminent domain, and the right to continue the operation of a railway over the property of the citizen calls for the continued exercise of the same sovereign power, which can only be justified upon the principle that the operation, as well as the original construction of a line of railway, is the exercise of the public duty primarily imposed upon the state as the representative of the people, and in the performance of which the state may subject private property to the burden necessary to be imposed in order to secure the building and operation of the highway. In enacting statutes providing for the building, maintenance, operation and management of railways as part of the public highways of the state, the power exercised is sovereign or governmental, and the enforcement of the provisions of the statutes in these particulars belongs to the sovereignty enacting the statutes, and the agencies by it provided for that purpose, and no other government, state or national, can, either through its executive or judicial arm, undertake to administer such statutes.

In undertaking the public duty of regulating the operation of the railways of the state of Iowa, the legislature has provided a system creating a board of commissioners and authorizing such board to invoke the aid of the courts of the state in administering the law regulating the railways, and in express terms the statute creates the mode of procedure to be followed when the aid of the courts is invoked, and power is conferred upon the courts named in the statutes to grant writs of injunction and other process as a means of compelling obedience to the rules established by the board of commissioners, if the same are confirmed by the court. By the laws of the states of Wisconsin, Illinois, and other states, similar boards of commissioners are created therein. No one would contend for

a moment, if the attorney general of Iowa should apply, for instance, to the board of commissioners of the state of Wisconsin, for an order directed to the Chicago, Milwaukee & St. Paul Railway Company, requiring it to obey some provision of the statute of Iowa regulating the railway business in the latter state, that the Wisconsin board could entertain the same on the ground that the Chicago, Milwaukee & St. Paul Railway Company was a corporation created under the laws of Wisconsin. The reply would be that the board of commissioners of the state of Wisconsin had no power to administer the laws of the state of Iowa; and would not the same be true if the application was made to a court of the state of Wisconsin for a decree to enforce an order made by the Iowa commissioners? It is a well-known fact that a large part of the railways of the state of Iowa are operated by corporations created under the laws of the states of Wisconsin and Illinois, and it certainly cannot be true that by reason of that or any other fact the attorney general of Iowa can file in the courts of those states petitions for decrees compelling obedience to the rules and orders adopted by the Iowa commissioners. The Wisconsin corporations would be within the territorial jurisdiction of the courts of that state, as would likewise be true in Illinois, as to the corporations created in that state; but the subject-matter of the controversy would not be within the jurisdiction of the courts of either of the named states, and for that reason no relief could be had therein. The same must be true of the federal courts, for the United States has no more power to undertake the administration of the local laws regulating the railways of Iowa than has the state of Wisconsin. We must not be misled by the fact that this court exercises its jurisdiction within the state of Iowa. It is not a question of territorial jurisdiction in the limited sense of the mere place of bringing suit, but of jurisdiction over the subject-matter. If the contention of counsel for defendant is sustainable, and it be held that the subject-matter of the controversy is within federal jurisdiction, then as to the mere place of bringing suit the choice is given, under the statute of 1888, of bringing the proceeding in the district wherein either the plaintiff or the defendant resides, and this suit might have been brought in the federal court in Wisconsin. The argument that sustains the jurisdiction in the federal courts over the subject-matter must likewise sustain the jurisdiction of the federal court in Wisconsin, as well as that in Iowa. Can it be true that the United States courts in Wisconsin will undertake the duty of compelling the Wisconsin corporations to obey the rules and regulations of the state of Iowa touching the railway business in Iowa? If however, the United States courts in Iowa can take jurisdiction of a proceeding of this nature on the ground of diverse citizenship, simply because the commissioners are citizens of Iowa and the defendant a corporation created under the laws of Wisconsin, then it must follow that the proceeding might have been originally brought in the United States circuit court in Wisconsin, and if there is nothing in the subject-matter of the proceeding precluding the United States court in Wisconsin from undertaking jurisdiction, there is nothing to preclude the state courts of Wisconsin from doing likewise, and thus the conclusion would be reached

that the state of Iowa, acting through its board of commissioners, can impose upon its sister states, as well as upon the United States, the duty and expense of administering the public laws of the state of Iowa, regulating its highways, and the operation and management thereof.

A strong argument against the exercise of jurisdiction by the federal court of a proceeding of this nature can be based upon the provisions of the statute regulating the method of procedure. The statute provides that a petition shall be filed in the district or superior court of the proper county; that it shall be a proceeding in equity; that it shall be heard in a summary and inexpensive way; that the court shall have power to issue injunctions mandatory and restrictive, requiring obedience on part of the railway company, its officers, and employes, to the decree of the court, and to punish a violation thereof by a fine not exceeding $1,000, and by imprisonment; that the decree entered by the court shall remain in force until the rule or order on which it is based shall be modified or vacated by the commissioners. If the federal court can, either originally or by removal, take jurisdiction of a petition filed by the board of commissioners under this statute, how is the same to be proceeded with? The statute, as well as the nature of the remedy, requires the proceeding to be in equity. Can a federal court carry through a suit in equity in any other mode than is provided for in the rules of equity prescribed by the supreme court? If the court requires the suit to be conducted as therein provided, then the orders of the board are not carried into effect in the summary and inexpensive way provided for in the state statute. Furthermore, the statute itself points out the methods, by fine and imprisonment, by which obedience to the decree of the court, enforcing the order of the commissioners, is to be secured. Can the courts of the United States enforce such punishment? If the United States court orders the imprisonment of A. B. as a means of enforcing obedience to its decree, can the board of commissioners, by vacating the order made by them, vacate the decree of the United States court and thus release A. B. from imprisonment? If fines are imposed by the United States court, and collected or paid into the hands of the clerk, what disposition is to be made thereof? Can the clerk, disregarding the provisions of the United States statutes, pay such fines to the treasurer of the county under the provisions of the state statute? These and other like difficulties tend to support the conclusion that a proceeding of this nature, whether viewed in regard to the nature of the power sought to be exercised, or in regard to the form of the proceeding, and the results to be accomplished thereby, is one not within the jurisdiction of the federal courts under any statute now in force. The distinction existing between controversies wherein it is sought to enforce or protect private rights and those wherein the state, either in its own name or through the agency of officials, created by the laws of the state, is seeking to enforce public rights or fulfill public duties, must be kept in mind. A failure on the part of a common carrier to obey or observe some provision of the state statute may create a right of action, private in its nature, on behalf of an individual of which the federal courts would have jurisdiction if the amount

at stake, and the citizenship of the parties litigant, was such as to confer jurisdiction between the parties, but when the proceeding is brought under the state statute for the purpose of compelling the common carrier to manage its business in the mode required by the rules or orders adopted by the commissioners, then the state is seeking to compel obedience to its public laws, and the state, whether the suit is in its own name, or in that of some board or official created by the laws of the state, is acting in its sovereign or governmental capacity, and in so doing it must act through agencies of its own creation.

In the present case the state of Iowa, through its board of commissioners, has undertaken to regulate the method of switching cars between the different lines of railway terminating at the city of Dubuque, and has fixed the compensation to be paid therefor, and by the proceeding filed in the district court of Dubuque county seeks a decree of court to compel the defendant company to obey the rule thus established. The purpose of the proceeding is not to establish or protect any private right, or to recover damages for a wrong done to an individual, but solely to compel the railway company to yield obedience to the laws of the state regulating the railway business of the state; and of such a proceeding the courts of the United States are not authorized by the statutes now in force to take jurisdiction, either originally or by removal. It is further urged, in support of the jurisdiction, that upon the face of the record it is made to appear that there is a federal question involved in the controversy, and on this ground the jurisdiction can be sustained. If it be admitted that the facts pleaded in the answer of the defendant company do present a question arising under the constitution and laws of the United States, that does not change or affect the inherent nature of the proceeding. If the subject-matter of the petition filed is without the jurisdiction of the circuit court, for the reasons already assigned, pleading a defense thereto, based upon the constitution of the United States, cannot confer the power to grant the relief sought by the petition in case the defense is overruled. The remedy in such cases is to set up in the state court the defense presenting the federal question, and if the ruling therein is adverse to the right asserted under the federal constitution, then this question can be taken from the court of last resort in the state to the supreme court of the United States. In this way the administration of the public laws of the state is left to the state tribunals, although the federal question is decided by the highest federal court.

The conclusion reached is that the subject-matter of the proceeding originally brought in the district court of Dubuque county is not within federal cognizance; that the pleading a defense, based upon the federal constitution and laws, does not change the character of the controversy, and therefore the proceeding is not one of which the circuit court of the United States can take jurisdiction, by removal or otherwise. The motion to remand must therefore be sustained.

CALDWELL, J., concurs.