## BÖRS *v.* PRESTON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued January 4th, 1884.—Decided April 7th, 1884.

*Consul—Constitutional Law—Evidence.*

In cases coming from the Circuit Courts, this court will determine from its own inspection of the record, whether they are of the class excluded by statute from the cognizance of those courts; this, although the question of jurisdiction is not raised by the parties.

The constitutional grant of original jurisdiction to this court of all cases affecting consuls, does not prevent Congress from conferring original jurisdiction, in such cases, also, upon the subordinate courts of the Union.

The jurisdiction of the Circuit Courts of the United States of suits by citizens

against aliens, is not defeated by the fact that the defendant is the consul of a foreign government.

The alienage of a defendant is not to be presumed from the mere fact that he is the consul, in this country, of a foreign government.

This action was brought in the Circuit Court of the United States for the Southern District of New York. The plaintiff below, Preston, was a citizen of that State, while the defendant was the consul at the port of New York, for the Kingdoms of Norway and Sweden.

The object of the action was to recover damages for the alleged unlawful conversion by defendant, to his own use, of certain articles of merchandise. The answer denied the material allegations of the complaint, and, in addition, by way of counterclaim asked judgment against the plaintiff for cer-tain sums. To the counterclaim a replication was filed, and a trial had before a jury, which resulted in a verdict in favor of plaintiff for $7,313.10. For that amount judgment was entered against the defendant. The defendant sued out this writ of error. The errors assigned with which the opinion of the court deals were the following:

"1st Assignment of error. That the plaintiff in error being before, at the time of the commencement of this suit, and ever since Consul of the Kingdoms of Norway and Sweden, he ought not, according to the Constitution and laws of the United States, to have been impleaded in the Circuit Court, but in the District Court of the United States, for the Southern District of New York, or in some of the District Courts, and that the Circuit Court had not jurisdiction of this cause, and should have directed a verdict for said defendant.

"2d Assignment of error. That judgment was given for the defendant in error against the plaintiff in error, when by the laws of the United States, the judgment ought to have been given for the plaintiff in error against the defendant in error, it being admitted that the plaintiff in error was, at the time of the transaction on the 8th of April, and continued to the trial, the Consul for Sweden and Norway, at the port of New York, whereby the Circuit Court had no jurisdiction of the cause."

*Mr. George H. Forster* for plaintiff in error.

*Mr. B. F. Tracey* for defendant in error.—I. The Circuit Court has jurisdiction in cases of foreign consuls. *Bixby* v. *Jansen*, 6 Blatchford, 315; *Graham* v. *Stucken*, 4 Blatchford, 50; *St. Luke's Hospital* v. *Barclay*, 3 Blatchford, 259.—II. The Circuit Court acquired jurisdiction against plaintiff in error as an alien, by virtue of the undisputed allegation in the complaint, which sets forth that the defendant in error is a citizen of the State of New York, and that the plaintiff in error is consul for the Kingdom of Norway and Sweden residing in New York. A consul for a foreign country, discharging his duties in an American seaport is, in the absence of any contrary evidence, to be presumed in law to be an alien and a citizen or subject of the country which he represents. Vattell, lib. 2, c. 2, § 34; Kent, 7th ed. 49.—III. Where it is alleged by the plaintiff in his complaint as the only matter giving jurisdiction to the Circuit Court that the defendant is a foreign consul, and the defendant answers and goes to trial and raises no objection or question as to the jurisdiction of the court until after he is defeated, and the cause has been brought into this court, it will be presumed in the absence of any testimony in the record to the contrary, that the defendant was an alien; because the natural presumption of his alienage is established by his failure to assert the contrary when such an assertion would have deprived the court of jurisdiction and relieved him from the trouble and expense of litigation. *Express Company* v. *Kountze Bro.* 8 Wall. 342, at 351; *Marshall* v. *Baltimore & Ohio Railroad Company*, 16 How. 314, 329; *Gassies* v. *Ballon*, 6 Pet. 761; *Robertson* v. *Cease*, 97 U. S. 646; *Brown* v. *Keene*, 8 Pet. 115; *Grace* v. *American Insurance Company*, 109 U. S. 278.—IV. The assignments of error in the record do not contain any mention of a want of jurisdiction in the Circuit Court, and it may not therefore be now considered.—V. If it should be held by this court that the Circuit Court had not jurisdiction, then as this court possesses, itself, original jurisdiction in the case by virtue of an express provision in the Constitution of the United States and in the Judiciary Act, this court will, in fur-

therance of justice, issue a *venire de novo* and try the cause
now and here. Or, as in *Robertson* v. *Cease, supra*, leave to
amend will be accorded the defendant in error, that he may
distinctly set out the alienage of the plaintiff in error at the
time of the commencement of the action, *nunc pro tunc*, and
irrespective of any statute of limitations. Other points taken
by the counsel related to the merits of the case.

MR. JUSTICE HARLAN delivered the opinion of the court.
After reciting the facts in the above language, he continued:

The assignments of error question the jurisdiction of the
Circuit Court, under the Constitution and the laws of the
United States, to hear and determine any suit whatever
brought against the consul of a foreign government.

Some reference was made in argument to the fact that the
defendant did not in the court below plead exemption, by
virtue of his official character, from suit in a Circuit Court of
the United States. To this it is sufficient to reply that this
court must, from its own inspection of the record, determine
whether a suit against a person holding the position of consul
of a foreign government is excluded from the jurisdiction of
the Circuit Courts. In cases of which the Circuit Courts may
take cognizance only by reason of the citizenship of the parties,
this court, as its decisions indicate, has, except under special
circumstances, declined to express any opinion upon the merits
on appeal or writ of error, where the record does not affirma-
tively show jurisdiction in the court below; this, because the
courts of the Union, being courts of limited jurisdiction, the
presumption, in every stage of the cause, is, that it is without
their jurisdiction unless the contrary appears from the record.
*Grace* v. *American Insurance Company*, 109 U. S. 278, 283;
*Robertson* v. *Cease*, 97 U. S. 646.

Much more, therefore, will we refuse to determine on the
merits, and will reverse on the point of jurisdiction, cases
where the record shows affirmatively that they are of a class
which the statute excludes altogether from the cognizance of
Circuit Courts. If this were not so it would be in the power of
the parties by negligence or design to invest those courts with

a jurisdiction expressly denied to them.  To these considera-
tions it may be added, that the exemption of the consul of a
foreign government from suit in particular courts, is the priv-
ilege, not of the person who happens to fill that office, but of
the State or government he represents.  It was so decided in
*Davis* v. *Packard*, 7 Pet. 276, 284.  While practically it may
be of no consequence whether original jurisdiction of suits
against consuls of foreign governments is conferred upon one
court of the United States rather than another, it is sufficient
that the legislative branch of the government has invested par-
ticular courts with jurisdiction in the premises.

We proceed then to inquire whether, under the Constitution
and laws of the United States, a Circuit Court may, under any
circumstances, hear and determine a suit against the consul of
a foreign government; in other words, whether other courts
have been invested with exclusive jurisdiction of such suits. .

The Constitution declares that "the judicial power of the
United States shall extend  .  .  .  to all cases affecting am-
bassadors or other public ministers and consuls;" "to controver-
sies between citizens of a State and foreign citizens or subjects;"
that "in all cases affecting ambassadors, other public ministers
and consuls,  .  .  .  the Supreme Court shall have original
jurisdiction;" and that in all other cases previously mentioned
in the same clause "the Supreme Court shall have appellate
jurisdiction, both as to law and fact, with such exceptions and
under such regulations as the Congress shall make."

The Judiciary Act of 1789 invested the District Courts of the
United States with "jurisdiction, exclusively of the courts of
the several States, of all suits against consuls or vice-consuls,"
except for offences of a certain character; this court with
"original, but not exclusive, jurisdiction of all suits  .  .  .  in
which a consul or vice-consul shall be a party;" and the Circuit
Courts with jurisdiction of civil suits in which an alien is a
party.  1 Stat. 76–80.  In this act we have an affirmance, by
the first Congress—many of whose members participated in the
convention which adopted the Constitution, and were, there-
fore, conversant with the purposes of its framers—of the prin-
ciple that the original jurisdiction of this court of cases in

which a consul or vice-consul is a party, is not necessarily exclusive, and that the subordinate courts of the Union may be invested with jurisdiction of cases affecting such representatives of foreign governments. On a question of constitutional construction, this fact is entitled to great weight.

Very early after the passage of that act, the case of *United States* v. *Ravara*, 2 Dall. 297, was tried in the Circuit Court of the United States for the District of Pennsylvania, before Justices Wilson and Iredell of this court, and the district judge. It was an indictment against a consul for a misdemeanor, of which, it was claimed, the Circuit Court had jurisdiction under the eleventh section of the Judiciary Act, giving Circuit Courts "exclusive cognizance of all crimes and offences cognizable under the authority of the United States," except where that act "otherwise provides, or the laws of the United States shall otherwise direct, and concurrent jurisdiction with the District Courts of the crimes and offences cognizable therein." In behalf of the accused it was contended that this court, in virtue of the constitutional grant to it of original jurisdiction in all cases affecting consuls, had exclusive jurisdiction of the prosecution against him. Mr. Justice Wilson and the district judge concurred in overruling this objection. They were of opinion that although the Constitution invested this court with original jurisdiction in cases affecting consuls, it was competent for Congress to confer concurrent jurisdiction, in those cases, upon such inferior courts as might, by law, be established. Mr. Justice Iredell dissented, upon the ground that the word original, in the clause of the Constitution under examination, meant exclusive. The indictment was sustained, and the defendant upon the final trial, at which Chief Justice Jay presided, was found guilty. He was subsequently pardoned on condition that he would surrender his commission and *exequatur*.

In *United States* v. *Ortega*, 11 Wheat. 467—which was a criminal prosecution, in a Circuit Court of the United States, for the offence of offering personal violence to a public minister, contrary to the law of nations and the act of Congress—one of the questions certified for decision was whether the jurisdic-

tion conferred by the Constitution upon this court, in cases
affecting ambassadors or other public ministers and consuls, was
not only original but exclusive of the Circuit Courts. But its
decision was waived and the case determined upon another
ground. Of that case it was remarked by Chief Justice Taney,
in *Gittings* v. *Crawford*, Taney's Dec. 1, 5, that an expression
of opinion upon that question would not have been waived had
the court regarded it as settled by previous decisions.

In *Davis* v. *Packard, ubi supra*, upon error to the Court for
the Correction of Errors of the State of New York, the precise
question presented was whether, under the Constitution and
laws of the United States, a State court could take jurisdiction
of civil suits against foreign consuls. It was determined in the
negative, upon the ground that by the ninth section of the act
of 1789, jurisdiction was given to the District Courts of the
United States, exclusively of the courts of the several States, of
all suits against consuls and vice-consuls, except for certain
offences mentioned in the act. The jurisdiction of the State
courts was denied because—and no other reason was assigned
—jurisdiction had been given to the District Courts of the
United States exclusively of the former courts; a reason which
probably would not have been given had the court, as then
organized, supposed that the constitutional grant of original
jurisdiction to this court, in all cases affecting consuls, deprived
Congress of power to confer concurrent original jurisdiction, in
such cases, upon the subordinate courts of the Union. It is
not to be supposed that the clause of the Constitution giving
original jurisdiction to this court, in cases affecting consuls,
was overlooked, and, therefore, the decision, in that case, may
be regarded as an affirmance of the constitutionality of the act
of 1789, giving original jurisdiction in such cases, also, to Dis-
trict Courts of the United States. And it is a significant fact,
that in the decision in *Davis* v. *Packard*, Chief Justice Mar-
shall concurred, although he had delivered the judgments in
*Marbury* v. *Madison*, 1 Cranch, 137; *Cohens* v. *Virginia*, 6
Wheat. 264, and *Osborn* v. *Bank of the United States*, 9 Wheat.
738, 821, some of the general expressions in which are not in-
frequently cited in support of the broad proposition that the

jurisdiction of this court is made by the Constitution exclusive of every other court, in all cases of which by that instrument it is given original jurisdiction.   It may also be observed that of the seven justices who concurred in the judgment in *Davis* v. *Packard*, five participated in the decision of *Osborn* v. *Bank of the United States.*

In *St. Luke's Hospital* v. *Barclay*, 3 Blatchford, 259, which was a suit in equity in the Circuit Court of the United States for the Southern District of New York, the question was distinctly raised whether the consular character of the alien defendant exempted him from the jurisdiction of the Circuit Courts.   The jurisdiction of the Circuit Court was maintained, the opinion of the court being that the jurisdiction of the District Courts was made by statute exclusive only of the State courts, and that under the 11th section of the act of 1789, the defendant, being an alien—no exception being made therein as to those who were consuls—was amenable to a suit in the Circuit Court brought by a citizen.   Subsequently the question was reargued before Mr. Justice Nelson and the district judge, and the proposition was pressed that the defendants could not be sued except in this court or in some District Court.   But the former ruling was sustained.

In *Graham* v. *Stucken*, 4 Blatchford, 50, the same question was carefully considered by Mr. Justice Nelson, who again held that the constitutional grant of original jurisdiction to this court in cases affecting consuls; the legislative grant in the act of 1789 to this court of original but not exclusive jurisdiction of suits in which a consul or vice-consul is a party; and the legislative grant of jurisdiction to the District Courts, exclusive of the State courts, of suits against consuls or vice-consuls, did not prevent the Circuit Courts, which had jurisdiction of suits to which an alien was a party, from taking cognizance of a suit brought by a citizen against an alien, albeit the latter was, at the time, the consul of a foreign government

In *Gittings* v. *Crawford*, Taney's Dec. 1, which was a suit upon a promissory note brought in the District Court of the United States for Maryland, by a citizen of that State against a consul of Great Britain, the point was made in the Circuit

Court on writ of error that by the Constitution of the United States this court had exclusive jurisdiction of such cases.

The former adjudications of this and other courts of the Union were there examined, and the conclusion reached—and in that conclusion we concur—that, as Congress was not expressly prohibited from giving original jurisdiction in cases affecting consuls to the inferior judicial tribunals of the United States, neither public policy nor convenience would justify the court in implying such prohibition, and, upon such implication, pronounce the act of 1789 to be unconstitutional and void. Said Chief Justice Taney: "If the arrangement and classification of the subjects of jurisdiction into appellate and original, as respects the Supreme Court, do not exclude that tribunal from appellate power in the cases where original jurisdiction is granted, can it be right, from the same clause, to imply words of exclusion as respects other courts whose jurisdiction is not there limited or prescribed, but left for the future regulation of Congress? The true rule in this case is, I think, the rule which is constantly applied to ordinary acts of legislation, in which the grant of jurisdiction over a certain subject-matter to one court, does not, of itself, imply that that jurisdiction is to be exclusive. In the clause in question, there is nothing but mere affirmative words of grant, and none that import a design to exclude the subordinate jurisdiction of other courts of the United States on the same subject-matter." Taney's Dec. 9. After alluding to the fact that the position of consul of a foreign government is sometimes filled by one of our own citizens, he observes: "It could hardly have been the intention of the statesmen who framed our Constitution to require that one of our citizens who had a petty claim of even less than five dollars against another citizen, who had been clothed by some foreign government with the consular office, should be compelled to go into the Supreme Court to have a jury summoned in order to enable him to recover it; nor could it have been intended, that the time of that court, with all its high duties to perform, should be taken up with the trial of every petty offence that might be committed by a consul in any part of the United States; that consul, too, being often one of our own citizens."

Such was the state of the law when the Revised Statutes of the United States went into operation. By section 563 it is provided that " the District Courts shall have jurisdiction . . . of all suits against consuls or vice-consuls," except for certain offences; by section 629, that " the Circuit Courts shall have original jurisdiction " of certain classes of cases, among which are civil suits in which an alien is a party; by section 687, that this court shall have " original but not exclusive jurisdiction of all suits . . . in which a consul or vice-consul is a party;" and by section 711, that the jurisdiction vested in the courts of the United States in the cases and proceedings there mentioned— among which (par. 8) are " suits against ambassadors or other public ministers or their domestics, or domestic servants, or against consuls or vice-consuls "—shall be exclusive of the courts of the several States. But by the act of February 18th, 1875, that part of section 711 last quoted was repealed, 18 Stat. 318; so that, by the existing law, there is no statutory provision which, in terms, makes the jurisdiction of the courts of the United States exclusive of the State courts in suits against consuls or vice-consuls.

It is thus seen that neither the Constitution nor any act of Congress defining the powers of the courts of the United States has made the jurisdiction of this court, or of the District Courts, exclusive of the Circuit Courts in suits brought against persons who hold the position of consul, or in suits or proceedings in which a consul is a party. The jurisdiction of the latter courts, conferred without qualification, of a controversy between a citizen and an alien, is not defeated by the fact that the alien happens to be the consul of a foreign government. Consequently, the jurisdiction of the court below cannot be questioned upon the ground simply that the defendant is the consul of the Kingdom of Norway and Sweden.

But as this court and the District Courts are the only courts of the Union which, under the Constitution or the existing statutes, are invested with jurisdiction, without reference to the citizenship of the parties, of suits against consuls, or in which consuls are parties, and since the Circuit Court was without jurisdiction, unless the defendant is an alien or a citizen of some

State other than New York, it remains to consider whether the record shows him to be either such citizen or an alien. There is neither averment nor evidence as to his citizenship, unless the conceded fact that he is the consul of a foreign government is to be taken as adequate proof that he is a citizen or subject of that government. His counsel insist that the consul of a foreign country, discharging his duties in this country, is, in the absence of any contrary evidence, to be presumed in law to be a citizen or subject of the country he represents. This presumption, it is claimed, arises from the nature of his office and the character of the duties he is called upon to discharge. But, in our opinion, the practice of the different nations does not justify such presumption. "Though the functions of consul," says Kent, "would seem to require that he should not be a subject of the State in which he resides, yet the practice of the maritime powers is quite lax on this point, and it is usual, and thought most convenient, to appoint subjects of the foreign country to be consuls at its ports." 1 Kent, 44. In *Gittings* v. *Crawford, ubi supra*, it was said by Chief Justice Taney that, "in this country, as well as others, it often happens that the consular office is conferred by a foreign government on one of our own citizens." It is because of this practice that the question has frequently arisen as to the extent to which citizens of a country, exercising the functions of foreign consuls, are exempt from the political and municipal duties which are imposed upon their fellow citizens. 1 Halleck's International Law, London Ed., vol. 1, ch. 11, § 10, *et seq.* In an elaborate opinion by Attorney-General Cushing, addressed to Secretary Marcy, the question was considered whether citizens of the United States, discharging consular functions here by appointment of foreign governments, were subject to service in the militia or as jurors. 8 Opin. Attys-Genl. 169. It was, perhaps, because of the difficulties arising in determining questions of this character that many of the treaties between the United States and other countries define with precision the privileges and exemptions given to consuls of the respective nations— exemptions from public service being accorded, as a general rule, only to a consul who is a citizen or subject of the country

he represents. Rev. Stat. of Dist. Col., Public Treaties, Index, title " Consuls."

But it seems unnecessary to pursue the subject further. When the jurisdiction of the Circuit Court depends upon the alienage of one of the parties, the fact of alienage must appear affirmatively either in the pleadings or elsewhere in the record. *Brown* v. *Keene*, 8 Pet. 115 ; *Bingham* v. *Cabot*, 3 Dall. 382 ; *Capron* v. *Van Noorden*, 2 Cranch, 126 ; *Robertson* v. *Cease*, *supra*. It cannot be inferred, argumentatively, from the single circumstance that such person holds and exercises the office of consul of a foreign government. Neither the adjudged cases nor the practice of this government prevent an American citizen—not holding an office of profit or trust under the United States—from exercising in this country the office of consul of a foreign government.

Our conclusion is that, as it does not appear from the record that the defendant is an alien, and since it is consistent with the record that the defendant was and is a citizen of the same State with the plaintiff, the record, as it now is, does not present a case which the Circuit Court had authority to determine. Without, therefore, considering the merits of this cause,

*The judgment must be reversed, and the cause remanded for such further proceedings as may be consistent with this opinion. It is so ordered.*

MR. JUSTICE GRAY.—MR. JUSTICE MILLER and myself concur in the judgment of reversal, on the ground that the Circuit Court had no jurisdiction of the case, because the record does not show that the defendant was an alien, or a citizen of a different State from that of which the plaintiff was a citizen. We express no opinion upon the question whether, if the record had shown that state of facts, as well as that the defendant was a consul, the Circuit Court would have had jurisdiction.