THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS
RAILWAY COMPANY
V.
JAMES MONAGHAN, ADMINISTRATOR.

*Railroads—Negligence—Personal Injuries—Crossings—Obstruction of —Signals—Evidence—Photographs—Verdict.*

1. It does not necessarily follow because a person approaching a railway

crossing with a team did not stop and listen for a train, that he was guilty of such negligence as to bar a recovery in case he suffers a personal injury from a train at such point. He must use ordinary care.

2. It is proper in personal injury cases to refuse to admit in evidence photographs of the spot where the injury occurred, when the same are taken at a time when the surroundings have an aspect different from that existing at the time thereof.

3. In an action brought to recover from a railroad company for the death of a person at a crossing, it being alleged that side tracks were filled with cars which obstructed the view of the main track from the highway, and of the latter from the former, also that the train which did the injury was run at an unlawful rate of speed, and that the signals required by the statute were in part omitted, this court holds that the petition of defendant to remove the cause to the Federal Court, not being verified in any manner, was properly denied; that in view of the circumstances no complaint can be made as to the verdict of the jury, although it was returned into court unsealed, the jury being subsequently polled, and agreeing thereto, and declines to interfere with the judgment for the plaintiff.

[Opinion filed October 27, 1891.]

APPEAL from the Circuit Court of Madison County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. JOHN T. DYE and GEORGE F. McNULTY, for appellant.

Mr. JOHN G. IRWIN, for appellee.

GREEN, P. J. This action was brought under the statute by appellee, administrator of Joseph Monaghan, deceased, to recover damages against appellant for the death of his intestate, averred to have been caused by the negligence of defendant's servants in charge of its train. Defendant's negligence charged in the declaration is, permitting its side track to be filled with freight cars, forming an obstruction which prevented persons approaching a certain crossing over a highway from the east, from seeing a train approaching the crossing, and from hearing any bell or whistle of the train, and also prevented the servants of defendant in charge of the train from seeing persons approaching the crossing from the eastward on the highway until the railroad track was reached; that defendant's train was

run at an unusually fast rate of speed, without any bell having been rung or whistle sounded at a distance of eighty rods from the crossing, and without any bell having been kept ringing or whistle kept sounding for said distance. It is then averred by reason of such negligence the deceased, with a wagon and horses, while crossing said railroad from the eastward on said public highway where the same intersect and cross each other, as he lawfully might, with due care and caution, the locomotive and train of defendant were driven against and upon deceased on the crossing, whereby he was, on the 3d day of September, 1890, killed; that he left plaintiff, his father, also his mother, two sisters and three brothers, to whom the damages accruing from his death can be distributed. Defendant filed its petition for the removal of the cause to the United States Circuit Court, which was denied, and therefore it filed the plea of not guilty, upon which issue was joined. The trial resulted in a verdict finding defendant guilty and assessing plaintiff's damages at $1,000. Defendant entered its motion for a new trial, which the court overruled and rendered judgment for plaintiff, whereupon defendant took this appeal.

The grounds relied on for reversal of this judgment are, that defendant's petition for removal of the cause to the Federal Court was improperly denied; that the evidence failed to establish the negligence of the defendant as charged in the declaration, and did show that plaintiff and the deceased were guilty of such contributory negligence in approaching the crossing where the collision occurred, as to bar the right to recover; that the court gave an improper instruction for plaintiff, and erred in refusing to admit certain photographs in evidence on behalf of defendant; that the court erred in receiving the verdict of the jury. The petition for removal was not verified in any manner. It was not accompanied by a bond executed by the president of defendant company, or by any one shown to have authority to execute such bond on behalf of defendant, and no evidence was furnished showing the solvency and sufficiency of the surety. The petition was properly denied. Weed Sewing Machine Co. v. Smith, 71 Ill. 204; Burr v. Preston, 111 U. S. 252; M. C. & L. Ry. Co. v. Swan, U. S. 397; Continental Ins. Co. v. Rhodes, 119 U. S. 239.

The evidence did clearly prove that the wagon in which deceased was riding was struck by the locomotive attached to a freight train of defendant company from the northeast while he was driving the team and wagon on the public highway from the east across the railroad track; that thereby he was injured and death resulted, and plaintiff and himself were then standing up in the wagon; that the side track on the east side of main track in the right of way, was then filled with freight cars for a long distance northeasterly from the crossing, greatly obstructing the view from the highway in that direction; that the side track below the crossing was filled with freight cars, and a space of only thirty-five to thirty-seven feet was left between these cars and those on side-track above crossing, for the passage of teams approaching the railroad; that defendant's train was late, and to make up lost time was running on a descending grade to this crossing at an unusual rate of speed for a freight train. The train men admitted the train was running twenty-five miles an hour; other witnesses estimated its speed at thirty-five to forty miles an hour and no whistle was sounded continuously for a distance of eighty rods from the crossing while the train approached it.

The engineer, fireman and one brakeman on defendant's train testified the bell was rung continuously for that distance, but plaintiff and at least three other witnesses, in a position and under circumstances which justified the jury in believing they had an opportunity to see the train and hear the bell if it had been rung, testify no bell was rung on that train as it approached the crossing.

The evidence, in our judgment, shows the obstructions to the view were placed by defendant on its side track and suffered to remain there, so that its servants in charge of a train approaching the crossing as this train did, could not see teams on the highway for some considerable distance east of the crossing nor until they were almost on the main track, and those in charge of the teams were in like manner prevented from seeing a train coming from the northeast. The jury were warranted also in finding from the evidence that the

train was running at an unusual and dangerous rate of speed on a down grade, without the statutory warning signals having been given, through the village of Moro to the crossing, and that defendant's servants in charge of the train, with knowledge of said obstructions to the view, were guilty of gross negligence in so running it at that rate of speed and thereby causing the collision resulting in the death of plaintiff's intestate. The plaintiff testified that he and the deceased looked and listened while approaching the railroad track; that he heard no train or warning signal; that he did not see the train until he passed the freight cars, and the wagon was on the crossing and the collision occurred. The team was not stopped as it approached the crossing, but he says he expected to hear signals if train was coming, and he had a right to expect those in charge of the train would perform the duty the law imposed upon them. It does not follow that because deceased did not stop the team and look and listen for a train, he was guilty of such negligence as would bar a recovery. Upon this question the Supreme Court in C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132, say: " The seventh instruction is based upon the theory that if deceased failed to exercise ordinary care to see and ascertain the approach of the train, such negligence was sufficient to bar a recovery, wholly irrespective of the degree of negligence of which the servants of the defendant may have been guilty in failing to give the requisite signals—that is to say, even though the defendant's servants may have been guilty of negligence in that behalf so gross as to amount to a wanton or reckless disregard of the safety of the deceased or of the public. That such is now the law, is too well established to require the citation of authorities." T., H. & J. R. R. Co. v. Voelker, 129 Ill. 542, is also in point upon the same question. It was not error to refuse to admit the photographs in evidence. They were views taken in November when the foliage was off some trees shown to have been north of the crossing on the line of the right of way, and were not views taken when no change in the physical conditions of the places represented had occurred. The cars on the side track were not the same as those that ob-

structed the view when the collision took place. The pre-
liminary proof offered to be made was not that *the views were
true and correct representations* of the places and objects about
which inquiry was being made, but that at the time the
pictures were taken the side track was full of box cars, the
same dimensions, the same height, substantially the same kind,
and the same distance apart, covering the same amount of
track that they covered on the day of accident, and that the
right of way and the surroundings were in the same condition
as to obstructions of the view as they were at the time of the
accident. If this proof had been made, the essential evidence
that the views were true and correct representations of said
places, was not made or offered to be made, and without this,
aside from the other reasons, the ·photographs ought not. to
have been admitted. The court did not err in receiving the
verdict of the jury. The record shows that after the jury had
retired · to consider of their verdict, about ten o'clock P. M.
they had agreed upon the verdict in the jury room, reduced
the same to writing, signed by the foreman, and handed it to
the bailiff in charge unsealed, and then separated. The next
morning when court convened defendant's attorneys objected
to the reception of the verdict because it was returned into the
court unsealed; thereupon the court ordered the jury called,
but one of the members of the jury did not appear and had
been excused by the court for that day. The court ordered
the jury to report in court the next day, which they did, all
being then present, and they were polled and the same iden-
tical verdict was agreed to, returned by the jury and received
by the court. The affidavits of all the jurors show that no
improper influence was used at any time to affect their verdict.
The requirement of the law was fulfilled, viz., that the ver-
dict received by the court was the true verdict rendered by
the jury who tried the cause.

The third instruction complained of might have been
framed so as to state the law more accurately, but we find the
court gave twenty-five instructions for the defendant, stating
the law upon every possible phase of the case most favorably
for the defendant, and we are satisfied the jury were not mis-

led.   Moreover, the Supreme Court in the case of T., H. &
J. R. R. v. Voelker, *supra*, approve an instruction substan-
tially the same as said third instruction.

Upon a review of the whole record, we are satisfied the
court below properly retained jurisdiction to try the cause;
that the evidence justified the verdict, and no error appears
requiring the reversal of the judgment.   It is therefore
affirmed.

*Judgment affirmed.*