### GENEUX et al. v. TEXAS & PACIFIC RY. CO.

Civ. A. 3245.

United States District Court
W. D. Louisiana, Shreveport D.
June 25, 1951.

Freyer, Goode, Nelson & Freyer, Shreveport, La., for plaintiffs.

Cook, Clark & Egan, Shreveport, La., for defendant.

PORTERIE, District Judge.

In this case[1] the defendant has filed a motion to strike the demand and prayer for

---

1. Mr. and Mrs. Geneux were driving on Jewella Road, outside the limits of the City of Shreveport, on the night of November 6, 1950, when the automobile in which they were riding, being operated by Mr. Geneux, met with a collision with a switch engine of the defendant company at a grade crossing of an industrial track across Jewella Road. Mr. Geneux

jury trial and to transfer the case to the non-jury calendar on the ground that no right to such trial exists under the Constitution and laws of the United States, as to the issues presented.

The Seventh Amendment to our Constitution reads as follows:

"*In Suits at common law,* where the value in controversy shall exceed twenty dollars, *the right of trial by jury shall be preserved,* and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S.C.A.Const. Amend. 7. (Emphasis ours).

The Judiciary Act of September 24, 1789, First Congress, Session 1, Chapter 20, 1 Stat. 73, entitled, "An Act to establish the Judicial Courts of the United States", Section 9(d), reads as follows:

"And the trial of issues\in fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury."

Further in the Judiciary Act, Section 12, which the annotator has denominated "Removal of causes from state courts", at the very end thereof, appears the following language:

"* * * [A]nd the trial of issues in fact in the circuit courts shall, in all suits, except those of equity, and of admiralty, and maritime jurisdiction, be by jury."

We believe the jurisprudence of the Nation has definitely and repeatedly held that in all civil causes, except those "of admiralty and maritime jurisdiction", trial shall be by jury.

We believe that the language of the Seventh Amendment has been construed from the earliest decisions as recognizing two classes of actions or suits in the United States, as had been recognized at the time of the adoption of the Amendment, to wit: suits at law and suits in equity, the former to be tried by juries and the latter before the court without a jury.

■ It is true that survival of action under Article 2315 of the Louisiana Civil Code, the part of the Louisiana law which serves as the basis of the instant action, was enacted in 1855, with subsequent amendments which have enabled the various causes of action exemplified in the present complaint, but the jurisprudence of the United States has shown that the words in the Seventh Amendment, "In Suits at common law" did not mean only those suits that existed and were known to the courts in 1789, the time of proposal, or in 1791, the year of adoption, but the words meant a legal concept. That initial concept was contemporaneously expressed by the Congress in the language of the Judiciary Act of 1789: "And the trial of issues in fact * * * in all causes *except civil causes of admiralty and maritime jurisdiction,* shall be by jury." (Emphasis ours). In truth, the Judiciary Act preceded in time the adoption of the Seventh Amendment in 1791.

■ So, it follows very clearly that an action at law, which unquestionably the instant case is, though given birth as late as in 1855, nonetheless classifies under the legal concept established by the Seventh

suffered personal injury and Mrs. Geneux died as a result of her injuries.

Mr. Geneux sues to recover damages for the personal injuries suffered by him, his expense incident thereto, loss of earnings, loss and damage to personal property, damage to the automobile and its contents, expenses incurred by the community as a result of Mrs. Geneux's injuries, mental anguish, loss of love and affection, companionship, etc., by reason of the death of Mrs. Geneux, other incidental items and an item for the pain and suffering of Mrs. Geneux, as survivor.

The other three plaintiffs in the suit are three minor children of Mrs. Geneux, one by her former husband and the other two issue of her marriage with Mr. Geneux, who sue to recover damages for mental anguish resulting from their mother's death, loss of her love and affection, maternal guidance and companionship, expenses incidental to her injury and death, for which her estate is liable, and for pain and suffering of their mother, as survivors. In the complaint plaintiffs pray for a trial before a jury as provided by law.

Amendment and also specifically described in the Judiciary Act of 1789.[2]

Now as to a review of the jurisprudence:

Justice Gray, in 1898, in the case of Capital Traction Co. v. Hof, 174 U.S. 1, 19 S.Ct. 580, 584, 43 L.Ed. 873, discusses the Seventh Amendment and also the Judiciary Act of 1789, as follows:

"The judiciary act of September 24, 1789, c. 20, drawn by Senator (afterwards Chief Justice) Ellsworth, and passed—within six months after the organization of the government under the constitution, and on the day before the first ten amendments were proposed to the legislatures of the states— by the first congress, in which were many eminent men who had been members of the convention which formed the constitution, has always been considered as a contemporaneous exposition of the highest authority. Cohens v. Virginia (1821) 6 Wheat. 264, 420 [5 L.Ed. 257]; Parsons v. Bedford [3 Pet. 433, 7 L.Ed. 732], above cited; Bors v. Preston (1884) 111 U.S. 252, 256, 4 S.Ct. 407 [28 L.Ed. 419]; Ames v. Kansas (1884) 111 U.S. 449, 463, 464, 4 S.Ct. 437, [28 L.Ed. 482]; Wisconsin v. Pelican Ins. Co. (1888) 127 U.S. 265, 297, 8 S.Ct. 1370, [32 L.Ed. 239]. That act provided, in sections 9 and 12, that the trial of issues of fact in a district or circuit court, in all suits, except those of equity or admiralty jurisdiction, should be by jury; in section 13, that the trial of issues of fact in this court, in the exercise of its original jurisdiction, in all actions at law against citizens of the United States, should be by jury; in section 17, that 'all the said courts of the United States' should 'have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law'; and in sections 22 and 24, that final judgments of the district court might be reviewed by the circuit court, and final judgments of the circuit court be reviewed by this court, upon writ of error, for errors in law, but not for any error in fact. 1 Stat. 77, 80, 81, 83, 84. Those provisions, so far as regards actions at law, have since remained in force, almost uninterruptedly, and they have been re-enacted in the Revised Statutes, allowing the parties, however, to waive a jury, and have their case tried by the court. Rev.St. §§ 566, 633, 648, 689, 691, 726, 1011."

It will be noted that in the Seventh Amendment the language refers merely to the "common law" and does not add the condition "of England".

▮ It has been established since the case of Erie R. Co. v. Tompkins, 304 U.S.

---

2. Defendant suggests that since Lord Campbell's Act, which is a "Death Act", or an act which transmitted the cause of action for wrongful death to designated beneficiaries, was not yet the law of England when the Seventh Amendment was added to our Constitution, this cause of action is new or created since and not one known then to the so-called common law, either of England or the United States.

When a sufficient amount of wrongful deaths were committed in England to warrant public attention, and after considering that there was a premium to the wrongdoer if the prospective injured plaintiff was actually killed (since no one else could theretofore sue), Lord Campbell's Act was enacted in England. After the like result was judicially proclaimed in 1851 in Louisiana, by the Hubgh case, 6 La.Ann. 495, the Louisiana Legislature enacted a similar act to Lord Campbell's Act in 1855, amending Article 2315 of our Civil Code, transmitting the very same cause of action,

with added elements of damages perhaps.

Thus we see that a cause of action, so to speak, was not "created" but the very same cause of action was "transmitted" to a living plaintiff, so that a tortfeasor could be held accountable to some designated living person for his wrongful killing.

Approaching from a different perspective: If the injured plaintiff lived after the injury suffered before Lord Campbell's and similar acts, then he could sue and get his trial by a jury of his peers; now, since such acts, why should the beneficiaries lose that right of trial by jury for the same cause of action, merely because it was transmitted to them by law?

Regardless, it is yet an action " * * * in the nature of a suit at common law", National Labor Relations Bd. v. Jones & Laughlin S. Corp., 301 U.S. 1, 57 S.Ct. 615, 629, 81 L.Ed. 893, 108 A.L.R. 1352, and plaintiffs' right to a trial by jury is preserved, unless waived, which is not done in this case.

64, 58 S.Ct. 817, 82 L.Ed. 1149, 114 A.L.R. 1487, that, "[t]here is no common law of the United States as distinguished from the individual states, a common statement of the rule being that there is no common law of the United States, in the sense of a national customary law, distinct from the common law of England as adopted by the several states each for itself, applied as its local law, and subject to such alteration as may be provided by its own statutes". 15 C.J.S., Common Law, § 16, page 630.

Our view is that Article 2315 of the Louisiana Civil Code is born of the legal concept of the common law of England. Louisiana applies it as its local law. It is subject, with time, to such alterations as may be provided by its own statutes.

■ From Volume 16, page 8, Common Law, ☞13, of the West's Federal Digest, we quote as from the case of The James & Catherine, 2 Fed.Cas. page 410, No. 756, Baldw. 544, as follows:

"The phrase 'common law' is used in Const. 7th Amend., U.S.C.A. in contradistinction to equity and admiralty and maritime jurisprudence, and may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle *legal rights*." (Emphasis ours).

■■ Reading the cases of Parsons v. Bedford, 3 Pet. 433, 7 L.Ed. 732; Root v. Lake Shore and M. S. R. Co., 105 U.S. 189, 26 L.Ed. 975; and, National Labor Relations Bd. v. Jones & Laughlin S. Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L. R. 1352, we come to the following conclusion as to what cases the Seventh Amendment is applicable:

"This provision is 'limited to rights and remedies *peculiarly legal in their nature,* and such as it was proper to assert in courts of law and by the appropriate modes and proceedings of courts of law.' * * * By common law, the framers meant 'what the Constitution denominated in the third article "law"; not merely suits, which the common law recognized among its old and settled proceedings, but suits in which *legal rights* were to be ascertained and determined, in contradistinction to those where *equitable rights* alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit.' " The Constitution of the United States of America (Annotated), Senate Document No. 232 (1938), page 694.

In the case of Low v. United States, 6 Cir., 169 F. 86, 88, we find the following language: "Aside from the fact that this was a criminal and not a civil case, there is no statute which provides for a trial by the court without a jury, except in cases of equity or maritime jurisdiction, or when so provided by the bankrupt law. *The trial of issues of fact in the District Court, save in the excepted cases, must be by jury."* (Emphasis ours.)

In the case of Hacker v. United States, 5 Cir., 16 F.2d 702, 703, our own, much-regretted Judge Foster said: "It is elementary in federal courts that, in suits at law, the trial must be by jury, unless it is waived by agreement."

In the case of Diederich v. American News Co., 10 Cir., 128 F.2d 144, 145, we find the following language: "This right guaranteed by the Federal Constitution is the right of trial by jury as at common law."

We cull the following language from the case of Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 891, 79 L. Ed. 1636: "The aim of the amendment, as this Court has held, is to preserve the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure, and particularly to retain the common-law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court."

The United States Court of Appeals for the Third Circuit, in the case of Smyth Sales v. Petroleum Heat & Power Co., 141 F.2d 41, 44, spoke as follows on the subject:

"The guarantee of the Seventh Amendment that in suits at common law the right of trial by jury shall be preserved extends to the award of damages, since at common law the amount of damages was for the jury."

In the instant case, the amount of damages must likewise be fixed by the jury, and the liability must be determined by the jury also.

In Ransom v. Staso Milling Co., D.C., 2 F.R.D. 128, 131, the court had before it a suit to recover damages for alleged injuries to property and for injunction restraining defendant from conducting operations which occasioned the damage. The plaintiff demanded a jury trial on legal issues, which was objected to by the defendant. The defendant's motion to strike plaintiff's demand for a jury trial was denied on the authority of Fitzpatrick v. Sun Life Assurance Co., D.C., 1 F.R.D. 713, 715–716, from which decision was quoted the following: "Causes of action historically legal are triable by the jury; causes of action historically equitable are triable by the court. If both are joined in a single civil action, the appropriate mode of trial must be followed as to each, and, in that sequence which will promote efficient administration without curtailing the substantive rights of the respective parties."

The movant in this case urges the point that Louisiana is an exception in the United States in the consideration of the point at issue, because Louisiana's civil law is born from and is a copy of the civil law of France.

We believe the case of Kearney v. Case, 79 U.S. 275, 20 L.Ed. 395, shows that the above argument as made by movant was made ineffective by the Act of March 3, 1865, 4th Section, 13 Stat. 501. This statute applies to the Federal Courts in Louisiana as well as elsewhere and necessarily supersedes all previous legislative provisions with reference to the Federal Courts in that state, respecting the same subject matter. Coming back to the Kearney case, supra, we quote from Justice Miller as follows:

"The judiciary act of 1789, § 12, declares that the trial of issues in fact in the circuit courts shall, in all suits, except those of equity and of admiralty and maritime jurisdiction, be by jury. This provision and that found in the 7th Amendment of the Constitution, *adopted after the judiciary act,* namely: 'that in suits at law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved,' constituted the only legislative rule for the Federal courts, except in Louisiana, until the act of 1865. Undoubtedly, both the judiciary act and the amendment to the Constitution secured the right to either party in a suit at common law to a trial by jury, and we are also of opinion that the statute of 1789 intended to point out this as the mode of trial in issues of fact in such cases." (Emphasis ours).

That Louisiana is not an exception on the point at issue in the family of states in our Union, the case of Messel v. Foundation Co., 274 U.S. 427, 47 S.Ct. 695, 697, 71 L. Ed. 1135, will prove. Through Chief Justice Taft, the Supreme Court there said:

"Clearly, therefore, suit for such a tort is not excluded from the jurisdiction of the state court under section 2315 unless the federal law forbids. To hold that the federal law forbids would be to deprive the petitioner in this case of the right secured to him under Judiciary Act 1789, § 9, as now contained in paragraph third of section 256 of the Judicial Code (Comp.St. § 1233), which gives exclusive jurisdiction in courts of the United States of all civil causes of admiralty and maritime jurisdiction, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it.'

"Section 2315 has been held by the Supreme Court of Louisiana to furnish the equivalent of the common law. In Gray v. New Orleans Dry Dock & Shipping Co., 146 La. 826, 84 So. 109, a case very much like this, a workman was injured while engaged in maritime employment. His action invoked article 2315 of the Civil Code. The respondent in the case pleaded that the petitioner's right of action, if any, was governed by the Workmen's Compensation Act, No. 20 of 1914, and not by the provisions of article 2315 of the Revised Civil Code

of Louisiana, as pleaded by the plaintiffs. The Supreme Court of Louisiana said:

" 'The work in which plaintiff was engaged at the time he was injured was maritime in its nature; his employment was a maritime contract, and his claim for damages was enforceable in the admiralty and maritime jurisdiction. For that reason, before the passage of the Act of Congress of October 6, 1917 [U.S.Comp.St. §§ 991(3), 1233], the Employers' Liability Act was not pertinent, and did not deprive the plaintiff of the right of a common-law remedy. *We say "common-law," because article 2315 of the Civil Code of this state is only an embodiment of the common-law right of action for tort,* viz.: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." ' " (Emphasis ours.)

The distinction betwen actions at law and suits in equity is quite well made, we believe, in the case of Root v. Lake Shore and M. S. R. Co., 105 U.S. 189, 26 L.Ed. 975, 981, in the following language:

"Indeed, it is the settled doctrine of this court that this distinction of jurisdiction, between law and equity, is constitutional, to the extent to which the 7th Amendment forbids any infringement of the right of trial by jury, as fixed by the common law. And the doctrine applies in patent cases as well as others. This court said in Parsons v. Bedford, 3 Pet. 433, 446, 7 L.Ed. 732, speaking of the meaning intended by the framers of that amendment, that 'By common law they meant what the Constitution denominated, in the 3d article, LAW, not merely *suits* which the common law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where *equitable rights* alone were recognized and equitable remedies administered.' The rule was repeated in Fenn v. Holme, 21 How. [481], 484 [62 U.S. 481, 16 L.Ed. 198, 199], in this language: 'In every instance in which this court has expounded the phrases, proceedings at the common law, and proceedings in equity, with reference to the exercise of the judicial powers of the courts of the United States, they will be found to have interpreted the former as signifying the application of the definitions and principles and rules of the common law to rights and obligations essentially legal; and the latter as meaning the administration with reference to equitable as contradistinguished from legal rights, of the equity law as defined and enforced by the Court of Chancery in England.' " (Emphasis by the Court).

Now, to come to the authorities cited by movant. We find that none really represents an action at law.

The companion cases of Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 300, 79 L.Ed. 603, 95 A.L.R. 1150; and, Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S. Ct. 890, 79 L.Ed. 1636, when read and the facts at issue really appreciated, point to the correctness of our ruling.

Though it will lengthen this opinion unduly, we must quote from the Dimick case, supra:

"The right of trial by jury is of ancient origin, characterized by Blackstone as 'the glory of the English law' and 'the most transcendent privilege which any subject can enjoy' (Bk. 3, p. 379); and, as Justice Story said (2 Story on the Constitution, § 1779), '* * * the Constitution would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' With, perhaps, some exceptions, trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases. Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care. Compare Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263.

"The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts."

The case of National Labor Relations Bd. v. Jones & Laughlin S. Corp., 301 U.S. 1,

57 S.Ct. 615, 629, 81 L.Ed. 893, 108 A.L.R. 1352, is one clearly involving basically " * * * equitable relief even though damages might have been recovered in an action at law".

The case of Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 87 F.2d 146, falls in the same category. The court found that the Congress had the right to declare the procedure to be followed and that Congress did not create in the instance a common-law right to damages requiring trial by jury, saying:

"Statutory provisions of this kind in the public interest are not considered as conferring common-law rights requiring trial by jury. They provide for public proceedings, equitable in their nature." 87 F.2d 146, 151.

The next case, United States v. Alexander, 47 F.Supp. 900, is one involving a condemnation proceeding, provided for by an Act of Congress. There the court said:

"The right of the government to file a declaration of taking and thereby take possession of land prior to a judicial determination of its value does not rest on principles of law applicable to procedure in civil actions generally. It derives from a federal statute which gives that power." 47 F. Supp. 900, 903.

The next case is that of Simmons v. United States, 29 F.Supp. 285, which is an action provided for by the Tucker Act. Though damages are to be reached under the Tucker Act, the Congress has provided that such special cases in tort against the United States be without jury.

The next case cited by movant involves suit by the United States to enjoin an overcharge of rent and to recover treble damages. This case styled, United States v. Friedman, 89 F.Supp. 957, involves an action under particular statute of Congress and no jury has been provided and the statute in the main is really equitable in character involving an injunction of the offending landlord.

The brief of both sides in this case agree on the point that the Erie R. Co. v. Tomp-

kins case, supra, holds there is no Federal common law as such. We believe, as aforestated, that the State of Louisiana in 1855 could transmit an action at law under Article 2315, which has the characteristics of what the Seventh Amendment and the Judiciary Act said must be tried by a jury. The attorney for movant claims that the Erie case, supra, has "eliminated the only situation to which the Seventh Amendment could possibly apply"—the Seventh Amendment would then be completely and entirely meaningless.

The motion to strike the demand of the plaintiffs for a jury trial and to transfer the case to the non-jury calendar on the ground that no right to such trial exists under the Constitution and the laws of the United States has to be overruled and denied.

It is so ordered.