ALBERT F. MAGDANZ et al., Petitioners, v. DISTRICT COURT OF WOODBURY COUNTY, Respondent.

No. 43690.

OCTOBER 27, 1936.

Kindig, Faville & Mathews, for petitioners.

Henderson, Hatfield & Wadden, and Frederick M. Deutsch, for respondent.

RICHARDS, J.—On June 8, 1936, a document captioned "Letters Rogatory" was filed in the office of the clerk of respondent court, same having originated in the district court of Pierce county, Nebraska. In substance it was a request by the Nebraska court that the respondent court cause the petitioners herein and others to appear before respondent court at a time and place to be fixed, and that at such time and place petitioners and others named be compelled by respondent court to make answers on oath to oral interrogatories relative to issues in an action pending in the Nebraska court, in which Atlas Corporation was plaintiff and petitioners and others were defendants. The document also requested that petitioners and the others named be compelled to bring with them all books, records and data concerning a long series of transactions between the defendants in the action, and that all such books, records and data, after being produced, be marked as plaintiffs' exhibits and all returned with the deposition, so to be taken, to the Nebraska court. On June 8, 1936, respondent court entered an order that the request of said "letters rogatory" be allowed and that the taking of said depositions commence on June 15, 1936, before F. H. Rice, a judge of said court, and that petitioners herein produce the books, records and data above mentioned and that subpoena issue accordingly. A subpoena *duces tecum* was served on petitioners and others. On June 15, 1936, petitioners appeared before respondent court and filed motion to set aside the order of June 8 and to quash the subpoena. On June 27, this motion was overruled following a hearing thereon in which evidence pertaining thereto was introduced. Thereupon petitioners objecting to examination, especially examination on oral interrogatories and not upon written interrogatories, and refusing to be so examined, the court ordered petitioner Magdanz committed to jail until he should see fit to obey the order of the court.

In stating their position petitioners concede that anciently there arose in the civil law a practice of procuring the testimony of witnesses who were in foreign countries through the medium of letters rogatory. Petitioners concede also that instances of use of letters rogatory by courts of our own country, where there were no statutory provisions for taking depositions and

under circumstances that brought such letters within the well defined practice that pertained to letters rogatory may be found. This much conceded, petitioners then vigorously urge that in the instant case the Nebraska court lacked authority to issue, and was prohibited by the Nebraska statutes from issuing the document filed in respondent court on June 8, 1936, and that the document lacked the essentials of letters rogatory, and was wholly ineffective as such. The facts being all before the respondent court, petitioners say that that court acted in excess of its authority and jurisdiction in founding its proceedings upon and in acting upon the so-designated but futile letters rogatory, and that its orders and rulings should be annulled for that reason. Such is the question presented on this writ.

One weighing petitioners' proposition should first ascertain what are the essentials, not of form, but of substance of letters rogatory, and what are the essential things in the practice of their use. A definition is found in Anderson's Dictionary of Law, 1893 edition:

"Letters rogatory. A request by one court of another court in an independent jurisdiction, that a witness be examined upon interrogatories sent with the request."

A note is appended to this definition that "Coming from the court of a foreign country, the witness may be compelled to appear and depose in the circuit court to which the letters are sent. (Citing authorities.)" In Bouvier's Law Dictionary, (Rawle's 3d Rev.) p. 1935, Baldwin's Edition 1934, is found a definition, the material portions of which are the following:

"Letters rogatory. An instrument sent in the name and by the authority of a judge or court to another, requesting the latter to cause to be examined, upon interrogatories filed in a cause depending before the former, a witness who is within the jurisdiction of the judge or court to whom such letters are addressed. * * * Where the government of a foreign country, in which witnesses purposed to be examined reside, refuses to allow commissioners to administer oaths to such witnesses, or to allow the commission to be executed unless it is done by some magistrate or judicial officer there, according to the laws of that country, *letters rogatory* must issue.

"These letters are directed to any judge or tribunal having

jurisdiction of civil causes in the foreign country, recite the pendency of the suit in court, and state that there are material witnesses residing there, whose names are given, without whose testimony justice cannot be done between the parties, and then *request* the said judge or tribunal to cause the witnesses to come before them and answer to the interrogatories annexed to the letters rogatory, to cause their depositions to be committed to writing and returned with the letters rogatory; 1 Greenl. Ev. Sec. 320. In letters rogatory there is always an offer, on the part of the court whence they issued, to render a mutual service to the court to which they may be directed, whenever required. The practice of such letters is derived from the civil law, by which these letters are sometimes called letters requisitory. A special application must be made to court to obtain an order for letters rogatory, and it will be granted in the first instance without issuing a commission upon satisfactory proof that the authorities abroad will not allow the testimony to be taken in any other manner; 1 Hoffman, Ch. Pr. 482; 2 Dan. Ch. Pr. 3d Am. Ed. 953.

''Though formerly used in England in the courts of common law; 1 Rolle, Abr. 530, pl. 13; they have been superseded by commissions of *dedimus protestatem,* which are considered to be but a feeble substitute. Dunl. Adm. Pr. 223, n.; Hall, Adm. Pr. 37. The Courts of admiralty use these letters; and they are recognized by the law of nations. See Foelix, *Droit Inter.* liv. 2, t. 4, p. 300, Denisart; Dunlap, Adm. Pr. 221; Bened. Adm. sec. 533; 1 Hoffm. Ch. 482.''

The foregoing definitions appear to be supported by the great weight of the authorities. Letters rogatory are part of the early growth of the law, in a period when the paucity of legislation providing methods of practice and procedure created a necessity that the courts in large measure work out, and by adopting establish as lawful, ways and means of functioning. The authorities indicate that such necessity was the warrant for the practice of issuing letters rogatory, and the element of necessity seems not to have been abandoned, but still is recognized as a thing essential to their issuance. Examples of such necessity are suggested in the definitions above, for instance, a situation arising where the government of a foreign country, in which the witness may be, refuses to allow commissioners to administer

oaths to the witnesses, or to allow the commission to be executed unless it be by some magistrate or judicial officer of that country. Instances of such necessity have arisen where the laws of the state, in which the witness may be, fail to clothe the commissioner with power to command the presence of the witness. Thus in ex parte Taylor, 110 Tex. 331, 220 S. W. 74, 9 A. L. R. 963, and in State v. Bourne, 21 Ore. 218, 27 Pac. 1048, proceedings had been initiated in one state for the taking of testimony of witnesses in another. In each of these cases, the witness refusing to appear, and there appearing to have been no law authorizing the commissioner by whom the deposition was to be taken to enforce the attendance of the witness, a necessity arose bringing the situation within the recognized practice in the use of the letters rogatory addressed to a court that could compel attendance.

The writers of the foregoing definitions apparently intended to mention, as another element or part of the practice in the use of letters rogatory, that is, the attaching of written interrogatories to be propounded to the witness. There are several authorities by which this portion of the definition is supported. In Stengel v. Stengel, 85 N. J. Eq. 277, 96 Atl. 358, 359, there was before the court an application for order for issuance of letters rogatory. The application was refused. Among other things the court said:

"Another incident to taking depositions upon commission. or letters rogatory is that interrogatories must be annexed and approved by the court. There are no interrogatories annexed to the papers before me."

In Gross v. Palmer, (C. C.) 105 Fed. 833, 834, a similar application for order that letters rogatory issue was refused. The court said:

"There seems to be no direct authority for defendant's contention that oral examination may be had under letters rogatory."

In support of the application in the Gross case there seems to have been an affidavit upon information and belief that taking the evidence by deposition would not be adequate in that case. With respect to that feature of the application the court said, "I am of the opinion that the impossibility of obtaining the

testimony sought by ordinary procedure as under a commission, should be established with certainty; the most satisfactory method being the issuance of such commission, and its return showing the impossibility, after proper efforts made, of obtaining the desired testimony thereunder.''

In Doubt v. Pittsburgh & Lake Erie R. Co., 6 Pa. Dist. Ct. Rep. 238, the court said:

''Counsel have produced no case in which it has been held that letters rogatory may be issued without interrogatories. * * * So far as we can ascertain, the universal custom has been to attach interrogatories to the letters. This is apparent from the fact that every standard law dictionary defines letters rogatory as a letter requesting the latter to cause to be examined upon interrogatories filed, etc. (See Bouvier, Am. & Eng. Ency. of Law, Anderson, etc.), and the form books provide for interrogatories: Smith's Forms, 583.''

As holding contra respondent cites De Villeneuve v. Morning Journal Assn., (D. C.) 206 Fed. 70, 71, in which case a motion for letters rogatory was granted for examination of witnesses in a foreign country. The following language is in the opinion:

''This case is one in which a number of the witnesses are likely to be unwilling, so that the examination should be oral, though that is a most unusual method, and not upon written interrogatories.''

We turn now to the situation when respondent court overruled the motion to set aside the order of June 8, and proceeded to commit petitioner for contempt. The following facts were before the court: That the statutes of Nebraska [Comp. St. 1929, sections 20–1240 et seq.] provide that testimony of witnesses may be taken in three modes, first by affidavit, second by deposition, third by oral examination. After defining the first and third modes these statutes provide with reference to the second mode, that is, the taking of testimony of witnesses by deposition, that all courts of record are authorized to grant commissions to take depositions within or without the state, that the commission must be issued to a person or persons therein named, under the seal of the court, and that depositions under it must be taken upon written interrogatories unless the parties otherwise agree;

that the Nebraska court presented to respondent court, as the only necessity for issuance of letters rogatory, a copy of an order of the Nebraska court in which is a finding of that court that it is essential to the determination of said pending case that defendants (petitioners herein) be required to produce said books and records for inspection, copy and audit, and that they be required to testify concerning their property rights at great length in depositions upon oral interrogatories, because they are hostile and unwilling witnesses; that this finding by the Nebraska court was based on recitals contained in such order to the effect that previously petitioners had disregarded a subpoena served on them in Nebraska, following which plaintiff in the case had served on petitioners a demand for inspection and copy of books and records which demand was disregarded, following which, upon plaintiff's motion, the Nebraska court entered an order for such production. The further fact was before respondent court that as a part of the last mentioned order of the Nebraska court, it was directed that a commission issue to one Turner, a notary public of Woodbury county, Iowa, to take the depositions of petitioners, and that petitioners appeared before such commissioner to testify upon any written interrogatories attached to the commission, but refused to be examined under said commission upon oral interrogatories. There having been no written interrogatories attached to the commission the Woodbury district court refused to hold petitioners in contempt for their refusal.

As we have pointed out the Nebraska legislature had prescribed the procedure to be followed by the courts of that state, and by litigants in procuring desired testimony. These statutes are general in terms and we think they are intended to be inclusive of the whole subject matter of the examination of witnesses. In the case before us, the Nebraska court, by the order permitting plaintiff to examine witnesses in Iowa orally upon letters rogatory, in reality substituted such procedure for, and in lieu of, definite procedure already fixed by the Nebraska legislature. Respondent would justify by saying that the Nebraska court was exercising the inherent powers it possessed, to resort to letters rogatory. But we are satisfied that the weight of authority is to the effect that if the Nebraska court had such inherent power, it had it solely because, and could use it solely when, that court faced a situation of actual necessity in its functioning as a court.

Of course no such necessity existed, in truth, if there was already a statutory method for doing the same thing. From these propositions respondent does not seriously dissent, but claims a necessity did exist that warranted doing a different thing by use of letters rogatory. To be more specific, respondent says that it was necessary that plaintiff in the Nebraska action be permitted to examine the witnesses, in a lengthy manner, including examination by plaintiff of the books and records to be produced, and that this be done orally rather than upon the statutory written interrogatories. Respondent says this alleged necessity comes about because the witnesses are hostile, on account of which respondent says the oral method of examination is the only sufficient manner of developing the facts. The issue in the Nebraska action was whether certain conveyances should be set aside as fraudulent. The Nebraska court, as the basis for issuance of letters rogatory, entered the findings in its order for issuance of letters rogatory, that we have set out above. But a perusal of these findings of the court, on which respondent relies, carries the conviction that no necessity existed, in the sense in which the word is used by the authorities in discussing the accepted practice pertaining to letters rogatory. On the contrary the matters of necessity, so called by respondent, were really matters of expediency, and of their nature afforded no foundation on which the Nebraska court could stand, and say that necessity warranted the exercise of its inherent powers to issue letters rogatory. The court did not face a situation warranting letters rogatory. This conclusion is reached the more readily because in this case the use of letters rogatory had for its purpose the evading or avoiding of an express legislative enactment that depositions be taken on written interrogatories. In such a situation, and as a matter of public policy, it would be indeed a strong necessity that could accomplish such end, if it could be done at all. The legislative act was presumably to attain ends of public welfare and justice, into which ends we need not stop to inquire, although, but for some such provision, it is apparent that an impecunious litigant might be resultantly and wholly deprived of opportunity to cross-examine were it permitted to the opposing litigant to take depositions at will at far distant places upon oral interrogatories. Resting our conclusion as above we need not inquire whether the Nebraska court erroneously as-

sumed that nothing in the nature of letters rogatory interdicts their issuance without written interrogatories attached.

We conclude that the Nebraska court resorted to the so-called letters rogatory without such occasion therefor as authorized the court so to do and that the instrument filed in respondent court was ineffective as letters rogatory. If they be looked upon as depositions then they were not usable for examination of the witnesses because there were not attached the written interrogatories that the statute demands. With reference to the respondent court, it was not proceeding under any express authority found in the statutory law of Iowa. It was attempting to exercise inherent power assumed by courts when they approve letters rogatory received from other courts. Such inherent power of course depends upon sufficient facts to warrant its exercise, that is, the presentation of letters rogatory that were such in fact and were issued substantially in the manner of the recognized practice of courts in respect thereto. All the matters to which we have called attention were before the respondent court when it overruled the motion to vacate the order of June 8, and committed petitioner for contempt. We are of the opinion that, with these matters before the court, it was proceeding in excess of its jurisdiction and inherent powers. We fail to see that the full faith and credit clause of the Federal Constitution, Article IV, Sec. 1, to which respondent calls attention in argument, affects the situation because this constitutional provision, referred to in Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 291, 8 S. Ct. 1370, 32 L. Ed. 239, as a rule of evidence, does not require judicial proceedings of foreign states to be enforced if they are rendered without jurisdiction or otherwise wanting in due process of law. Wetmore v. Karrick, 205 U. S. 141, 27 S. Ct. 434, 51 L. Ed. 745.

The order on the writ is that the proceedings of the trial court in connection with the so-called letters rogatory be annulled including the order of June 8, allowing the request, the order overruling petitioners' motion to vacate the order of June 8, and the order committing petitioner for contempt. The motion to vacate the order of June 8 should have been sustained.

Respondent court will enter orders in conformity herewith. —Writ sustained.

PARSONS, C. J., and ALBERT, DONEGAN, KINTZINGER, HAMILTON, and STIGER, JJ., concur.